UNITED STATES, Appellee

v.

NATHAN SOLINSKY, Sergeant, U. S. Army, Appellant

2 USCMA 153, 7 CMR 29

No. 594

Decided February 2, 1953

Joseph N. Miniace, Esq., for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The facts necessary to a proper understanding of the single issue involved in this review are these: The accused enlisted in the Army in August 1947. On September 5, 1949, which was prior to the expiration of his term of enlistment, he was stationed in Germany. On that date, pursuant to some prior arrangements, he was given an honorable discharge for "the convenience of the Government," in order that he might re-enlist for an indefinite period of time. His discharge was dated September 5, 1949, and his re-enlistment was effective the following day. From April to June 1948, he was a postal clerk in an engineer company stationed at or near Wolfgang, Germany, and it was during this period that the offenses were committed. He was returned to the United States to stand trial and on

**153**

April 13, 1951, was arraigned on six specifications, four alleging alterations or forgeries of United States postal money orders, and the other two alleging larcenies of similar instruments. On August 29, 1951, he was convicted on all charges and specifications and sentenced to a dishonorable discharge, total forfeitures of pay and allowances, and confinement at hard labor for ten years. The findings and sentence were approved by the convening authority and a board of review in the office of The Judge Advocate General, United States Army, affirmed. We granted accused's petition for review to determine the single issue of whether the court-martial had jurisdiction to try him for offenses committed during his prior enlistment.

Because the re-enlistment of the accused was effective prior to the Uniform Code of Military Justice, 50 USC §§ 551–736, and after the Manual for Courts-Martial, U. S. Army, 1949, was promulgated, the Articles of War and the principles of that Manual are controlling on the issue herein involved. Article of War 2, 10 USC § 1473, designates the persons who, at the time these offenses were committed, were subject to military law; and paragraph 10, on page 9 of the 1949 Manual, sets out the following rule for termination of jurisdiction:

"The general rule to be followed in the Army is that court-martial jurisdiction over officers, cadets, soldiers, and others in the military service of the United States ceases on discharge or other separation from such service and that jurisdiction as to an offense committed during a period of service thus terminated is not revived by re-entry into the military service."

Appellate defense counsel contends the decision of the Supreme Court of the United States in United States ex rel. Hirshberg v. Cooke (1949) 336 US 210, 93 L ed 621, 69 S Ct 530, disposes of the issues in this case and that we must follow the holding in that case. We would agree with the latter part of the contention if the former were correct but the difference in facts poses different issues and requires us to reach a different result. In that case the defendant, an enlisted man serving in the Navy, was captured by the Japanese and remained a prisoner of war until his liberation by American forces in 1945. He was hospitalized for a time and restored to duty in January of 1946. Because his term of enlistment had expired he was given an honorable discharge on March 26, 1946. He re-enlisted for another four-year term the following day. Approximately one year later he was tried upon charges of maltreatment of other prisoners under his charge during his confinement as a prisoner of war. His plea that the court-martial was without jurisdiction to try him for the offenses committed during a prior enlistment at the termination of which he had received an honorable discharge was overruled by the military courts. He was convicted on some of the charges and specifications and sentenced to be reduced from chief signalman to apprentice seaman, to receive a dishonorable discharge, and to be confined for ten months. Thereafter he instituted habeas corpus proceedings in the Federal district court contending that the court-martial which convicted him lacked jurisdiction. The district court sustained his contention, the court of appeals reversed, certiorari was granted by the Supreme Court and it ended the litigation by affirming the holding of the district court.

To determine whether an affirmance of this finding and sentence would do violence to the principles of that case, we shall first set out what we believe to be the rationale announced therein and then apply the reasoning to the case at hand. Mr. Justice Black, who wrote the opinion for the Court, seems to have followed this line of reasoning: that courts-martial are courts of special and limited jurisdiction and they derive their power solely from Congressional grants; that persons or classes of persons subject to the Code must be specifically designated by Congress; that there is an affirmative duty on the part of the Government to establish that an accused is a person subject to the Code; that assuming the military had jurisdiction over the person at the time an offense or offenses were committed, the

jurisdiction might be lost by the giving of an honorable discharge, providing Congress had not reserved the right of the military to proceed, such as in fraud cases; that this had been the military rule for many years; that certain Naval regulations in effect at that time, particularly Article 8 (Second) of the Articles for the Government of the Navy (34 USC, Section 1200, Article 8) supported an argument that Hirshberg was subject to trial by a Navy court-martial, while Article 14 (Eleventh) of the same Articles supported a contrary argument; that in order to reconcile the conflict between the two articles the administrative interpretation given to those and similar articles of war should be considered; that the long-standing Army and Navy interpretation denied jurisdiction to courts-martial and that interpretation would be adopted by that Court, particularly in view of the fact that Congress had tacitly approved the administrative construction by failing to make any substantial changes over the years.

Realizing we are bound by the principles of the Hirshberg case, we apply them to the facts as found in this record. There can be no dispute that at the time the offense was committed the accused was a person who was expressly made subject to military law by the Articles of War. The crux of the problem is the effect of a discharge for the benefit of the Government as there are special situations contemplated by Congress which are not encompassed within the Hirshberg doctrine.

On page 10 of the Manual for Courts-Martial, U. S. Army, 1949, we find the following statement which suggests an exception to the general rule that a discharge prevents prosecution where an offense, except in fraud cases, is committed in a prior period of enlistment:

"In certain cases, if the person's discharge or other separation *does not interrupt his status as a person belonging to the general category of persons subject to military law, court-martial jurisdiction does not terminate.* Thus, when an officer holding an emergency commission was dis-charged from that commission by reason of his acceptance of a commission in the Regular Army, there being no interval between services under the respective commissions, it was held that there was no termination of the officer's military status—merely the accomplishment of a change in his status from that of a temporary to that of a permanent officer—and that court-martial jurisdiction to try him for an offense (striking enlisted men) committed prior to the discharge was not terminated by the discharge. . . ." [Emphasis supplied]

This provision was not first enacted by the promulgation of the 1949 Manual. It has been the law for approximately twenty-five years as the Manual for Courts-Martial, U. S. Army, 1928, has substantially the same provision. Moreover, it is amplified and expanded in the Manual for Courts-Martial, United States, 1951, and this enactment expressly mentions the type of case with which we are now dealing. This Manual, paragraph 11, page 14, provides:

"The general rule is that court-martial jurisdiction over officers, cadets, midshipmen, warrant officers, enlisted persons, and other persons subject to the code ceases on discharge from the service or other termination of such status and that jurisdiction as to an offense committed during a period of service or status thus terminated is not revived by re-entry into the military service or return into such status.

"*b. Exceptions.*—To this general rule there are, however, some exceptions which include the following:

"Jurisdiction as to an offense against the code for which a court-martial may adjudge confinement for five years or more committed by a person while in a status in which he was subject to the code and for which he cannot be tried in the courts of the United States or any State or Territory thereof or of the District of Columbia is not terminated by discharge or other termination of such status (Art 3a). Jurisdiction under Article 3a should not be exercised

without the consent of the Secretary of the Department concerned.

.    .    .    .    .

"In those cases when the person's discharge or other separation does not interrupt his status as a person belonging to the general category of persons subject to the code, court-martial jurisdiction does not terminate. Thus when an officer holding a commission in a Reserve component of an armed force is discharged from that commission, while on active duty, by reason of his acceptance of a commission in a Regular component of that armed force, there being no interval between the periods of service under the respective commissions, there is no termination of the officer's military status—merely the accomplishment of a change in his status from that of a temporary to that of a permanent officer—and court-martial jurisdiction to try him for an offense committed prior to such discharge is not terminated by the discharge. Similarly, when an enlisted person is discharged for the convenience of the Government in order to re-enlist before the expiration of his prior period of service, military jurisdiction continues provided there is no hiatus between the two enlistments. A member of the armed forces who receives a discharge therefrom while serving without the continental limits of the United States and without the Territories enumerated in Article 2(11), and who immediately becomes a person accompanying, serving, or employed by the armed forces in such an oversea area, remains amenable to trial by court-martial for offenses committed prior to his discharge because such discharge does not interrupt his status as a person subject to the code. . . . ."

While it must be admitted that the 1951 Manual could not be used as authority for holding the accused in this case, the quoted provisions point out the hypothetical cases the framers of that Manual concluded were covered by the provisions which have been in other Manuals in substantially the same form

**156**

for a quarter of a century and these hypothetical cases are supported by pronouncements by Army authorities over that period of time. We, therefore, believe the 1951 Manual is declaratory of what the law has been since this type of discharge came into existence.

A research of available authorities shows uniformity in holding that the Government does not waive its right to proceed under the circumstances of this case. These are the principal authorities we have been able to find. The three following cases are reported in the Digest of Opinions of The Judge Advocate General of the Army (1912–1940), on page 181. In CM 121586 (1918), it was held that the accused was answerable for his acts as an enlisted man committed prior to the time he accepted a commission. The rule announced was that an enlisted man who is discharged to accept a commission does not lose his military status as the effect of the transaction was merely to change from one kind of military status to another. This change did not deny the court-martial jurisdiction to try the accused even though his enlisted status terminated.

In court-martial cases No. 145710, 149318, and 149937 (1921), it was held that "The discharge of an emergency officer for the sole purpose of enabling him to accept a commission in the Regular Army, which he does in fact accept the next day, there being thus no interruption in either his service or his pay, does not terminate his amenability to trial by court-martial for offenses committed by him prior to such discharge and while he was still an emergency officer, even though the offenses be in violation of articles of war other than AW 94."

CM 157051 (1923) discloses a factual situation where an officer was discharged for the purpose of being re-enlisted in a lower grade. He was notified of his re-appointment by the same communication by which he was notified of discharge and he immediately accepted the new commission and took the oath of office. It was held that the discharge did not terminate the officer's amenability to trial by court-martial for

offenses committed prior to the discharge.

In United States v. Johnson, 10 BR 213, 216 (1939), an Army board of review passed on the precise question before us. There the accused was discharged for the convenience of the Government prior to the termination of his enlistment period pursuant to the provisions of Section 8, AR 615–360, April 4, 1935. He was tried after the re-enlistment and convicted of offenses committed prior thereto. The following quotation is taken from page 216:

"It would appear from the above citations at first blush that in the instant case the accused, not having been brought to trial for an offense committed prior to his discharge from his first enlistment, the court-martial was without jurisdiction to try him at all, as the second enlistment would not operate to revive jurisdiction. However, a close examination of the digested opinions of The Judge Advocate General and other authorities hereinafter referred to indicates that the mere discharge from the service does not operate to sever jurisdiction provided there is no interruption in the service and that no moment exists during which the accused is not subject to military jurisdiction and control. Where the discharge operates to terminate the service of the soldier and remand him to civilian life, then and in that case only does the discharge from the service operate to terminate jurisdiction over accused. The criterion is not the mere fact of discharge but the termination of military service. In the cases referred to above digested in the opinions of The Judge Advocate General, 1912, the termination of jurisdiction by discharge exists, in the language of the opinion, where the soldier 'has thus become a civilian' and has 'left the Army'. . . ."

In United States v. Aikins and Seevers, 5 BR–JC 331, 354 (1949), the rule of the Johnson case was reaffirmed. Both the board of review and the judicial council held that the two accused could be tried for offenses committed prior to the time of their discharge for the convenience of the Government. The board of review discussed the previous authorities dealing with the subject and then distinguished that case from the Hirshberg case. The discussion is found in the following language:

". . . . The distinguishable feature between these two cases on the facts is that in the Hirshberg case, supra, the discharge became effective after the accused's term of enlistment had expired and the discharge was not effected in order to accomplish his re-enlistment. In the instant case the discharges were accomplished prior to the expiration of each accused's term of enlistment and they were obviously predicated upon re-enlistment in the Regular Army prior to the regular expiration of their term of enlistment. While the rule stated in the Hirshberg case, supra, applies in situations where the soldier's term of enlistment *has expired* or where he has been separated from the service and a hiatus occurred between his discharge and subsequent re-enlistment, no such rule has been adhered to by The Judge Advocate General of the Army in cases where soldiers are discharged *prior to the expiration* of their terms of service for the convenience of the Government, either for purposes of re-enlistment or acceptance of a commission. Indeed, the exact opposite is true. . . ."

If there are good reasons for the holdings in the foregoing authorities, there are equally good reasons for differentiating this case from the Hirshberg case. In this connection if we can determine the reasons for adopting the general rule, we may be able to determine the reasons prompting the exceptions. In Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, pages 89 and 93, paragraphs 118 and 124, respectively, state as follows:

". . . . the general rule is that *military persons*—officers and enlisted men—are subject to the military jurisdiction, so long only as they remain such; that when, in any of the recognized legal modes of separation

from the service, they cease to be military and become *civil persons,* such jurisdiction can, constitutionally, no more be exercised over them than it could before they originally entered the army, or than it can over any other members of the civil community."

· · · · · · · · · ·

"JURISDICTION AFTER A SECOND APPOINTMENT OR ENLISTMENT. It remains to refer to the effect, per se, · of a subsequent appointment or enlistment of an officer or soldier, (once duly dismissed, resigned, &c., or discharged,) upon his amenability to trial for an offence committed prior to such discharge, &c., (and within two years), but not yet made the subject of a charge or trial. Upon this point there is not known to have been any adjudication. Putting out of the question the class of offences, the amenability for which is expressly defined by the 60th article, *it is the opinion of the author that, in separating in any legal form from the service an officer or soldier or consenting to his separation therefrom, and remanding him to the civil status at which the military jurisdiction properly terminates, the United States,* (while it may of course continue to hold him liable for a pecuniary deficit,) *must be deemed in law to waive the right to prosecute him before a court-martial for an offense previously committed but not brought to trial.* In this view, a subsequent re-appointment or re-enlistment into the army would not revive the jurisdiction for past offenses, but the same would properly be considered as finally lapsed." [Emphasis supplied]

If the rationale announced by Colonel Winthrop is the basis for the rule, it might be well to consider whether the accused reverted to a civilian status. This requires a consideration of the appropriate Army Regulations and the evidence touching on the continuity of accused's service. The regulation under which his discharge and re-enlistment were effected was AR 615–365, dated June 21, 1948, and it is designated "Enlisted Men Discharge Convenience of

**158**

Government." The pertinent part of the Regulation is as follows:

"2. Delegation of authority to order discharge—Authority to order discharge of individuals for the convenience of the Government is delegated to the commanders specified in paragraph 7, AR 615–360—

· · · · · · · · · ·

"b. To permit immediate reenlistment for 3 years or more as authorized, of individuals who apply for and are qualified for such reenlistment:

(1) At any time during the last 90 days of a current enlistment.

(2) For the purpose of—

· · · · · · · · ·

(b) Volunteering for foreign service, when the amount of service remaining in current enlistment is not sufficient to complete a prescribed foreign service tour in the oversea command to which an individual is to be assigned; discharge and reenlistment to be effected when the oversea assignment is evidence;

(c) Filling own vacancy where at least 12 months remain to complete a normal tour of foreign service, when returning to the United States from an oversea command on emergency or morale leave and having less than 18 months remaining in current enlistment.

· · · · · · · ·

*"Individuals being discharged from their present enlisted status as provided above will be reenlisted on the day following discharge. The discharge certificate will not be delivered to the individual until after reenlistment is effected."* [Emphasis supplied]

At the trial evidence was presented regarding the procedure required by the above regulation. Qualified witnesses, well-acquainted with its provisions, testified that the purpose of providing that discharge on one day be followed by immediate re-enlistment on the next day was to insure continuous service; that upon discharge the current enlistment

ceased and the re-enlistment became effective immediately; that there would be no lapse of time between the two enlistments; that the new enlistment contract would not be legal until after the person was sworn in for his re-enlistment, at which time his discharge would be given him; and that there would be no break in his pay during the period. Concededly, one witness testified that the discharge would be effective at midnight one day and the re-enlistment would become effective at 12:01 a.m. the following day, thereby leaving a hiatus of one minute. However, in the light of other testimony in the record, as it may be influenced by the regulation, we do not believe that such a statement compels a conclusion that accused reverted to a civilian status.

When accomplished in the manner prescribed by the regulation, accused's discharge did not terminate his membership in the Army. This, because his then current term did not expire until sometime after September 5, 1949, and his discharge for convenience could not have been effective on that date without immediate re-enlistment. Had he accepted the discharge and thereafter failed to comply with the provision of the regulation requiring his re-enlistment, his discharge would have been fraudulently procured. Paragraph 10 of the 1949 Manual lists as one of the exceptions to the general rule the following:

> "If a soldier obtains his discharge by fraud, the discharge may be canceled and the soldier arrested and returned to military control. He may also be required to serve out his enlistment and may be tried for his fraud."

The reasons why a soldier, who enters into an arrangement with the Government to discharge him for the given purpose of re-enlisting, should not be permitted to claim a lapse in service are explained in the decision of the board of review in United States v. Butcher, 10 BR–JC 223. The following quotation is taken from page 232:

> ". . . . In any case involving a discharge for the convenience of the Government for the purpose of effecting a change in particular status where the 'dischargee' did not fulfill the terms of the discharge, there is a presumption that the discharge was obtained by fraud (Dig Op JAG 1912, p 457). It is apparent, therefore, that in those instances wherein a person in the military service is discharged prior to the expiration of his contractual term of service for the purpose [sic] of reenlistment or to continue in the military service in a different capacity and fails to fulfill the terms of the discharge, there is a valid presumption that military jurisdiction over such person has not lapsed. *We are unable to perceive any cogent reason for stating there has been a lapse of military jurisdiction where the 'dischargee' complies with the terms of a discharge which has for its intendment the 'dischargee's' continuous military service.*" [Emphasis supplied]

In the case at bar, accused's discharge was conditioned upon his compliance with the provisions of the regulation and would have been voidable without such compliance. Clearly, the only purpose for a discharge and re-enlistment prior to the expiration of the then existing term of enlistment is to facilitate the administration and effectuation of a continuous term of service. It is not intended to return a soldier to a civilian status and then have him once again become a soldier, rather it is intended that the military status be not interrupted. The whole complexion of the proceedings argue against an interrupted status. The discharge was not delivered until the re-enlistment had been accomplished; there was no break in service or pay; the accused could have been ordered to perform a special mission covering that period; he was entitled to every benefit incidental to membership in the armed forces; there was not a fraction of a second that he was not subject to military orders or military control; and every fact and all circumstances point to a situation where the discharge and re-enlistment were to be simultaneous events for the sole purpose of preventing a hiatus or break in the service.

Under the regulations and under the procedure outlined, one term could not end until the other commenced. If, by analogy, we compare the arrangement with a commercial contract, it was an extension before the end of the term. The only change was an extension of the term.

In the final analysis we find the following similarity and dissimilarity between the instant case and the Hirshberg case. The point of similarity is that in both instances the accused were subject to military law at the time the offenses were committed and the burden rested on the Government to establish that it did not lose jurisdiction by discharge. The point of departure is that in the Hirshberg case it appeared clearly that Congress, except in a limited field, had not reserved the right to proceed directly or indirectly against personnel of the armed forces who had reverted to a civilian status, but in this instance it had authorized a procedure which would retain jurisdiction. This conclusion is arrived at by virtue of the fact that Congress authorized the President to promulgate rules and regulations to govern the administration of military law and, as early as 1928, he had prescribed that so long as a discharge did not terminate an accused's status as a person belonging to a general category of persons subject to military law, courts-martial jurisdiction would not be lost. In spite of the fact that this regulation has been in the Manual since 1928, and that the Army has interpreted the regulations to continue jurisdiction over the dischargee, Congress has not seen fit to pass contrary regulations. Again, in this instance, we do not have conflicting Army regulations as the administrative construction has always been that under this type of discharge, jurisdiction does not terminate. Accordingly, if Congress has, by not requiring a change in the practice, approved the Army construction, the doctrine of the Hirshberg case would require an affirmance of the decision of the board of review. Moreover, the other tests laid down in that case can be applied here and the decision affirmed as the facts meet the requirements.

160

There is another fundamental difference between the two cases. In this instance the accused was discharged and re-enlisted while he was on duty in Germany. Hirshberg's status changed while he was in the United States. In all of the Manual provisions, it is expressly provided that if a change in status does not remove the person from a category of persons subject to military law, then jurisdiction is not cut off. Subsection (d) of Article of War 2, supra, provides as follows:

"All retainers to the camp and all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the Armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles."

If we were to make what appears to us to be an unreasonable assumption, that is, that accused's status changed, we would be faced with this factual situation. For an infinitesimal period of time the accused became a civilian without the territorial jurisdiction of the United States. During this period he was housed, maintained, paid, and otherwise serviced by the United States Army. He was transported overseas and he was returned to the United States by the Army. Between these two events he was always a soldier. Under these circumstances he would either be accompanying or serving with the Armies of the United States from the moment he left these shores until he returned. If, for a moment, he stepped from his uniform into civilian clothes and then back again, he never stepped into a category which was not subject to military law. Under the principles announced in all the authorities, and under the Articles of War, he was always subject to courts-martial jurisdiction. A momentary break in service does not necessarily break court-martial jurisdiction. It did in the Hirshberg case but as we view the particular circumstances of this case, we find it did not do so here.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

In my opinion, United States ex rel. Hirshberg v. Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530, is controlling here. I read Hirshberg to say that once an enlisted man has been discharged from the armed forces, that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by applicable statute. I find no statutory provision—and the majority cites none—that is applicable here.

It is immaterial, I think, that there may be persuasive policy arguments in support of the result reached by the majority. We are here concerned with courts-martial, special tribunals whose jurisdiction must be found solely within the confines of the statutes creating them. If jurisdiction is not conferred by statute, then it matters not that it should be conferred.

I should add that I find in this record no intimation that the accused procured his discharge by fraud.

I would dismiss the charges for lack of jurisdiction in the court-martial which tried them.