UNITED STATES, Appellee

v

ROBERT A. MARTIN, Sergeant First Class, U. S. Army, Appellant

10 USCMA 636, 28 CMR 202

No. 12,856

Decided September 30, 1959

First Lieutenant William L. Garwood argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel W. H. Blackmarr and Captain Arnold I. Melnick.

First Lieutenant George J. Miller argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel James G. McConaughy.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of presenting false claims for purported travel by dependents from Medford, Massachusetts, to Long Beach, California, in violation of Article 132, Uniform Code of Military Justice, 10 USC § 932, and adjudged a sentence of forfeiture of $100.00 per month for six months. On review, The Judge Advocate General of the Army referred the record of trial to a board of review for consideration.[1] In part, the board of review held that the accused was subject to trial and punishment on specification 1 of Charge I notwithstanding that he had received a discharge between the commission of the offense and the time of trial. Pursuant to the provisions of Article 67

[1] Article 69, Uniform Code of Military Justice, 10 USC § 869.

(b)(2) of the Uniform Code, supra, 10 USC § 867, the Acting The Judge Advocate General certified the following question to this Court:

"WAS THE BOARD OF REVIEW CORRECT IN DETERMINING THAT THE COURT-MARTIAL HAD JURISDICTION TO TRY THE ACCUSED FOR SPECIFICATION I, OF CHARGE I, AN OFFENSE COMMITTED DURING THE ACCUSED'S PRIOR, INDEFINITE ENLISTMENT, WHERE THE ACCUSED HAD BEEN ENTITLED TO SECURE HIS UNCONDITIONAL RESIGNATION FROM THE ARMY BUT CHOSE INSTEAD TO RESIGN AND EFFECT AN IMMEDIATE REENLISTMENT?"

Specification 1 of Charge I alleges that the offense was committed in June 1955. At that time the accused was serving under an "indefinite" enlistment effected in December 1950 under the provisions of Section 27 of the Na-

**637**

tional Defense Act, 10 USC § 628 (now 10 USC § 3256(b)) which provided for certain re-enlistments for specified periods on a career basis. On January 4, 1957, the accused applied for a discharge under the provisions of Army Regulations 635–205 and immediate re-enlistment for a six-year period "to fill [his] own vacancy." The application was approved on January 7, and the accused was given an honorable discharge certificate dated January 9, under the stated authority of AR 635–220.[2] The accused re-enlisted on January 10.

In Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1 (1955), the Supreme Court held that a person who is completely separated from the service and returns to the civilian community cannot, while still in a civilian status, be tried by court-martial for an offense committed before his discharge. Here, however, the accused was subject to military law both at the time of the offense and at the time of trial. He is not, therefore, like *Toth*. However, the accused contends that his situation is like that of Hirshberg in Hirshberg v Cooke, 336 US 210, 69 S Ct 530, 93 L ed 621. Hirshberg was in the Navy. At the outbreak of World War II he was on Corregidor and became a war prisoner of Japan. After his release and a period of hospitalization, he was discharged because of the expiration of his enlistment; the next day he re-enlisted. Later he was tried by court-martial and convicted of charges of maltreatment of fellow-prisoners of war during his period of internment. Under Navy regulations, Hirshberg was subject to trial for the offense charged but the Supreme Court held that the regulations were in conflict with existing statutes providing for court-martial jurisdiction. The Government main-

tains that the *Hirshberg* decision is inapplicable and that the court-martial had jurisdiction over the accused because there was no break or hiatus in his term of service so that he was continuously subject to military law despite the issuance of a discharge. United States v Solinsky, 2 USCMA 153, 7 CMR 29.

Whether the accused's discharge was, under the statutes and regulations, conditioned upon immediate re-enlistment, or whether there was a gap or hiatus in the accused's service need not give us pause. In our opinion, the *Hirshberg* ruling is inapplicable.

The United States Supreme Court expressly based its decision in the *Hirshberg* case upon the "long-accepted understanding" of the services that under the statutes they had no "statutory court-martial power" to try discharged persons, "whether re-enlisted or not," for an offense committed before discharge. 336 US 210, 218, 219. The court gave "little weight" to the separate effort of the Navy to change that understanding. However, the hearings on the Uniform Code before the House Committee on Armed Services show clearly that Congress intended to enlarge the "statutory foundations" of court-martial jurisdiction. Congressman Elston suggested that the Committee "reach the whole subject" of the effect of discharge before discovery of an offense. Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, page 881. The Committee's working hypothesis was the following statement by Mr. Smart, its professional staff member: "Try everything in the civil courts you can *if the accused is not on active duty* and limit prosecutions to major offenses."

The Congressional intention was not

---

[2] Although there is some language in AR 635–205 (PERSONNEL SEPARATIONS—Convenience of the Government), which pertains to the discharge of "individuals serving in unspecified enlistments" (paragraph 3 (6)), it is apparent that the accused's application was actually covered by AR 635–220, which is expressly made applicable to "*individuals* [as the accused] *who have*

*served 3 or more years of an enlistment for an unspecified period of time.*" AR 635–220, paragraph 2. Evidently the accused's purpose in effecting his discharge and re-enlistment was to secure a somewhat better bonus payment for continued service than was allowed under his indefinite enlistment. Appellant's Brief, page 22, footnote 14.

realized on constitutional grounds as far as Article 3(a) purports to apply to persons who, after discharge, remain wholly and completely in a civilian status. Toth v Quarles, supra. But the Article is still important as an indication of the intention of Congress to expand the "statutory" jurisdiction of court-martial beyond the confines of the *Hirshberg* opinion.

It is contended, however, that since the offense in issue is triable in a Federal district court as a violation of either 18 USC § 287 or § 1001, Article 3(a) prohibits the exercise of court-martial jurisdiction. The argument disregards the fundamental purpose of the Article. The Article was intended to enlarge jurisdiction, not to restrict it.

Frauds against the Government were made the basis for continuing court-martial jurisdiction as early as 1863. See discussion in the *Hirshberg* case, pages 214–216. For almost a century before *Hirshberg*, therefore, a court-martial had statutory authorization to try an accused for fraud against the Government, even though he had received a discharge between commission of the offense and the institution of proceedings against him. The *Hirshberg* case did not strike down that authority and the hearings on the Uniform Code demonstrate that Congress did not intend to change it.

What I said in my separate opinion in United States v Gallagher, 7 USCMA 506, 513, 22 CMR 296, bears repetition here.

"One who re-enlists in the service after a discharge is not 'like Toth.' [a civilian] On the contrary, his position is like that of a person who leaves the country after committing a crime. During the time he is outside the jurisdiction he cannot be tried. But if he returns, he can, subject to the Statute of Limitations, be tried and convicted for an offense committed by him before his departure."

In my opinion, the court-martial had power to try the accused. I would, therefore, answer the certified question in the affirmative and affirm the decision of the board of review.

LATIMER, Judge (concurring in the result):

I concur in the result.

While I have reservations with respect to the hypothesis by which the Chief Judge reaches his holding—principally because of the provisions of Article 3(a), Uniform Code of Military Justice, 10 USC § 803, as developed by Judge Ferguson in his dissenting opinion—nevertheless I am sure the Chief Judge is correct in concluding the court-martial had jurisdiction to try accused for the offense in question. Accordingly, I concur in affirming the findings and sentence. I deem it appropriate, however, to elucidate my theory briefly in this separate opinion.

After having served more than six years of his then current indefinite enlistment, accused requested that he be discharged under the provisions of Army Regulations and immediately re-enlisted for a period of six years to fill his own vacancy. This "Request for Short Discharge and Immediate Reenlistment" was processed by the appropriate authority "for discharge and reenlistment." Thereafter, his request was honored and he received an honorable discharge certificate dated January 9, 1957. His enlistment record indicates he was immediately re-enlisted in grade to fill his own vacancy on January 10, 1957. As quoted in the principal opinion, the certified question requires us to determine, under these circumstances, whether accused remained amenable to trial by court-martial for a fraud against the Government allegedly committed during his indefinite enlistment.

It is well settled that a court-martial loses jurisdiction to try a person who is discharged and severs all connection with the military. Toth v Quarles, 350 US 11, 76 S Ct 1, 100 L ed 8 (1955). Moreover, the Supreme Court, in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949), held that jurisdiction to try an accused by court-martial for an offense committed prior to his separation from the service was lost

by reason of his discharge and was not re-invested by reason of his re-enlistment. That is not to say, however, that every present-day discharge defeats jurisdiction, for as we noted in United States v Solinsky, 2 USCMA 153, 7 CMR 29, although we are bound by the principles of *Hirshberg*, it must be construed in light of its facts and subsequent Congressional legislation.

In United States v Solinsky, supra, the accused was discharged prior to the expiration of his term of service for the convenience of the Government in order to accomplish his immediate re-enlistment. It was not intended that he be returned to a civilian status and as a result of that arrangement there was no hiatus of any kind in accused's service, his entitlements, or his obligations and responsibilities; his discharge was not delivered until his re-enlistment had been accomplished; he was not entitled to an absolute discharge, and in fact it was conditioned upon his immediate re-enlistment without a break in service. We noted that under these circumstances, long-standing and well-recognized regulations provided court-martial jurisdiction would not be lost, and that Congress had not seen fit to modify them. Hence we held the doctrine of *Hirshberg* to be inapplicable, and that under that type discharge military courts retained jurisdiction to try an accused for prior offenses.

While the issue in *Solinsky* was governed by the law applicable immediately prior to the effective date of the Uniform Code of Military Justice, the rule to which we adverted in that instance was not then new, and has been continued. Substantially unmodified for more than thirty years, it is stated as follows in paragraph 11*b*, Manual for Courts-Martial, United States, 1951:

"*In those cases when the person's discharge or other separation does not interrupt his status as a person belonging to the general category of persons subject to the code, court-martial jurisdiction does not terminate.* Thus when an officer holding a commission in a Reserve component of an armed force is discharged from that commission, while on active duty, by reason of his acceptance of a commission in a Regular component of that armed force, there being no interval between the periods of service under the respective commissions, there is no termination of the officer's military status—merely the accomplishment of a change in his status from that of a temporary to that of a permanent officer—and court-martial jurisdiction to try him for an offense committed prior to such discharge is not terminated by the discharge. Similarly, when an enlisted person is discharged for the convenience of the Government in order to re-enlist before the expiration of his prior period of service, military jurisdiction continues provided there is no hiatus between the two enlistments." [Emphasis supplied.]

As we further said in the last-mentioned case, at page 157, quoting from an earlier board of review decision:

"'. . . the mere discharge from the service does not operate to sever jurisdiction provided there is no interruption in the service and that no moment exists during which the accused is not subject to military jurisdiction and control. Where the discharge operates to terminate the service of the soldier and remand him to civilian life, then and in that case only does the discharge from the service operate to terminate jurisdiction over accused. *The criterion is not the mere fact of discharge but the termination of military service.*'" [Emphasis supplied.]

It remains, then, to be determined whether accused's discharge interrupted his military status.

While both parties mention *Hirshberg*, supra, in their briefs they concede it is not on all fours with the instant case. Obviously that is so for there the accused was discharged after the expiration of his term of enlistment. He had no right to remain in the service and likewise the Navy was bound to discharge him. Neither party had any choice as to when or for what purpose the discharge would be given. Thus it is clear that Hirshberg's sepa-

ration interrupted his military status even though he re-enlisted. His subsequent term of service was an entirely new one as opposed to a negotiated extension of his military status.

In the case at bar, accused was serving under an indefinite enlistment on a career basis and his term of service had not expired. The Army was not obligated to release him, as in the case of a soldier whose term of enlistment had expired, but, to the contrary, it would appear that accused was entitled to remain in the service until he reached the age of retirement. Of course, it must be conceded that accused was entitled to submit his unconditional resignation and, in that sense, at least, he could have made his term of service certain, terminated it, and returned to civilian life, for the Army would then be bound, with exceptions not here pertinent, to discharge him within three months. 10 USC § 3815. The short answer to this argument is that, while such right existed, accused never exercised it. To the contrary, it is clear that he submitted a conditional resignation for the express purpose of continuing his military status, in his same grade, and, to use the language of his request, to fill his own vacancy. He had served more than six years of an unspecified period of enlistment, and there can be no doubt but that the action accused requested fell within the purview of AR 635–220, June 4, 1956, paragraph 3d. As the Chief Judge points out, his purposes may have included securing a more favorable bonus payment but, in any event, it is beyond cavil that he did not intend to sever his military status. Rather, his action was calculated to continue his service, without interruption, and in his same grade and identical assignment. In fact, accused having conditioned his request upon remaining in the Service, I do not believe the Army could validly have terminated his indefinite career enlistment on the basis of his request and over his objection without complying with the conditions he specified. Moreover, I call attention to the fact that the last-cited regulation provides that in actions of the type accused requested, "The discharge certificate will not be delivered to the individual until after reenlistment is effected." In addition, I point out that the statute gives designated authorities three months within which they must accept unconditional resignations. Common sense and experience dictate that resignation by an indefinite enlistee—unlike the expiration of term enlistments, where the services can plan ahead for personnel reassignments thereby occasioned—may require allowance of a reasonable period of time before it must be accepted, not only to permit normal processing or to determine whether there are reasons the discharge should not be given, but in order that the unit in question may not have its operational efficiency impaired while awaiting a replacement, particularly in the instance of a critical position or job specialty. Those considerations do not exist, however, when one continues in his same assignment without a break in service and, significantly enough, the applicable regulation referred to earlier permits acceptance of conditional resignations like that submitted by accused, by "the commanding officer of any unit, activity, or station having the facilities to effect discharge"—a much broader class than that authorized to accept other resignations, and one which need only be equipped to accomplish the necessary personnel action.

Taking account of all the above considerations, it is clear to me that accused's discharge did not interrupt his military status. It was not intended by either party that accused become a civilian and thereafter once more a soldier. Quite to the contrary, it was the desire and purpose of both parties that his military status be uninterrupted, and the following language from *Solinsky*, supra, is equally applicable here:

". . . The whole complexion of the proceedings argue against an interrupted status. The discharge was not delivered until the re-enlistment had been accomplished; there was no break in service or pay; the accused could have been ordered to perform a special mission covering that period; he was entitled to every benefit incidental to membership in the armed forces; there was not a fraction of a

second that he was not subject to military orders or military control; and every fact and all circumstances point to a situation where the discharge and re-enlistment were to be simultaneous events for the sole purpose of preventing a hiatus or break in the service. Under the regulations and under the procedure outlined, one term could not end until the other commenced. If, by analogy, we compare the arrangement with a commercial contract, it was an extension before the end of the term. The only change was an extension of the term."

The views I express are not contrary to the principles announced by the Supreme Court in *Hirshberg*, for here, in order to protect his status and position in the Army, accused took purposeful action to continue his military status, without any hiatus and for a term certain. This is a far different situation from that presented in *Hirshberg*, where the discharge was not executed in order to perpetuate the existing status. The situation in this instance more nearly comports to that presented in *Solinsky*. Here the accused's discharge operated only to facilitate an exchange of some of his rights, duties, and obligations under his indefinite enlistment for different privileges and responsibilities. Instead of an action which returned accused to civilian life, it was but a consensual arrangement whereby his military status was continued without termination.

Accordingly, since accused's discharge did not interrupt his status as a soldier, court-martial jurisdiction to try him for an offense committed during his indefinite enlistment did not lapse. I, therefore, join with the Chief Judge in answering the certified question in the affirmative and affirming the decision of the board of review.

FERGUSON, Judge (dissenting):
I dissent.

My disagreement with the ultimate conclusion of my brothers involves both the legal propositions presented as the basis for their decision and their construction of the circumstances surrounding accused's entry upon a new period of military service. In order

**642**

properly to analyze the situation presented, the facts upon which this judicial power is founded must be examined in detail.

The accused enlisted in the Regular Army for an indefinite period on December 27, 1950. On June 13, 1955, he presented a claim to a disbursing officer in Korea for travel expenses allegedly incurred by his dependents incident to a permanent change of station. This claim formed the basis for the charge involved in the present appeal, as it appears to have been false and fraudulent. On January 4, 1957, the accused, then stationed at Fort Jackson, South Carolina, submitted a request that he "be discharged UP AR635–205 and immediately reenlisted in the Regular Army for a period of 6 years . . . to fill own vacancy." The request, forwarded through channels, was ultimately approved by the Commanding General, United States Army Training Center, Infantry, Fort Jackson, South Carolina, on January 7, 1957. The accused received an honorable discharge certificate, dated January 9, 1957, and pertinent records disclose that it was predicated upon the provisions of Army Regulations 635–220. The accused's re-enlistment papers bear the date of January 10, 1957, and corroborate his unrebutted assertion, made in an affidavit filed with this Court, that he re-entered the service on that day.

Accused's 1950 enlistment was initiated under the provisions of Section 27, National Defense Act, as amended, 10 USC § 628, now 10 USC § 3256, which authorizes persons serving in the three highest enlisted grades to renew their military status for unspecified periods of time on a career basis. The statute also provides that they may unconditionally resign from the Army upon the completion of three years' service. The submission of a resignation entitles the service member to be discharged within a period of three months unless it appears that he is under investigation or in default with respect to public property or funds. 10 USC § 628, supra.

In implementation of this statute,

the Secretary of the Army promulgated Army Regulations 635–220, June 4, 1956, in effect at the time of accused's separation and re-enlistment. Paragraph 3 of that directive is entitled "Unconditional resignation," and, among other things, authorizes the commanding officer "of any unit, activity, or station having the facilities to effect discharge . . . to accept the resignation of an individual who has served a minimum of 6 full years in an unspecified period of enlistment for the purpose of immediate reenlistment for a specified period to fill his own vacancy."

Construed in the light of the foregoing regulatory provision, I am of the opinion that accused's request for discharge and immediate re-enlistment must fairly be deemed to have been a submission of his unconditional resignation after the completion of a period of service in excess of six years, albeit for the purpose of re-enlisting for a specified term. That the Army so regarded it is evidenced by their entry of Army Regulations 635–220, supra, as the authority for accused's separation, and this despite the fact that he purported to seek separation and re-entry "UP AR635–205," a directive concerning itself with discharge and release for the convenience of the Government.[1] Thus, it follows that the accused's discharge from the service was in nowise conditioned upon the execution of his re-enlistment papers and that he, at the moment of his release, stood in the same position as one who had completed his obligation to serve for a term certain. While he intended to re-enlist in the service, and in fact did so, these factors cannot serve to distinguish his case from that of an individual who, having served for a term of years, chooses to continue his military career by re-enlisting contemporaneously with his discharge. In this connection, I am quite unable to accept the contention that accused was re-

quired to serve three months beyond the date on which he submitted his resignation and that, in consequence, he received a discharge prior to the expiration of his enlistment. It is clear beyond cavil that the purpose of this provision of the indefinite enlistment statute, 10 USC § 628, supra, is to require expeditious action on the part of the service concerned to separate the individual and that it was not intended to extend his obligation to serve. United States v Lucas, 19 CMR 613.

Thus, in my opinion, the issue presented by the certified question is narrowed to the single inquiry whether one who has completed his obligated term of service is discharged; and contemporaneously re-enlists, remains amenable to trial by court-martial for an offense committed during his prior enlistment.

Judge Latimer's separate opinion indicates that he is led to a different conclusion by the circumstances outlined above. He believes the accused sought and was granted a "short" discharge for the purpose of re-enlisting in the Army. Hence, he finds the rationale of United States v Solinsky, 2 USCMA 153, 7 CMR 29, applicable to retain jurisdiction over accused's offense. Thus, he adopts the position of the board of review below that, while the accused may have had a right to submit an unconditional resignation, he did not do so. This construction, however, fails to give attention to the fact that accused had completed the service required under both the statute and regulations, requested his discharge, and received it, all under the provisions of the directive governing resignations.

The construction which I accord to the accused's situation is not novel. Indeed, United States v Lucas, supra, involved facts identical to those presented here. There, an Air Force board of review stated, at page 620:

---

[1] Some explanation for the apparent inconsistency in the authority on which accused based his request and that on which the discharge was premised may be gleaned from the fact that the request was filed on a mimeographed form entitled "Request for Short Discharge and Immediate Reenlistment," a personnel action patently inapplicable to the circumstances under which he was serving.

"The accused herein, having served more than four years of his enlistment for an unspecified term, clearly fell within the foregoing provisions of the statute and regulation. Barring the presence of factors apart from the period of time he had served, he was entitled as a matter of law to have his resignation accepted. While it is true that Paragraph 4a of Air Force Regulation 39–15, . . . required that the resignation contain a complete statement of the reasons for the resignation, his right to discharge was in no way dependent upon the validity of the reasons given. It is also true that the statute and regulation required his discharge 'within three months' of the submission of his resignation. We do not view that requirement as extending this accused's term of service for such period of time. That requirement is, in effect, a limitation upon the Secretary of the Air Force as to the period of time during which he *must* act. We think it clear that the intendment of the statute was to give to the 'indefinite enlistee' the option of tendering his resignation, obtaining discharge, and returning to civilian life if he so chose. Thus, the accused herein was, upon his discharge, in a status analogous to that of one who has been discharged upon completion of his term of service. No conditions had been attached to his discharge. He was a free agent insofar as re-enlisting was concerned."

As it is my view that the accused occupies the same position as one who has completed an enlistment for a term certain, has been discharged, and has re-enlisted, I believe that we are faced with a situation identical to that confronting the United States Supreme Court in Hirshberg v Cooke, 336 US 210, 69 S Ct 530, 93 L ed 621 (1949). There, a Navy enlisted man was discharged from the service on March 26, 1946. His re-enlistment became effective on March 27, 1946. The Navy subsequently brought him to trial before a general court-martial for offenses committed during his prior enlistment. He was convicted and, by

writ of *habeas corpus*, contested the court-martial's jurisdiction. The Government urged the Supreme Court to sustain the validity of the proceedings on the basis that the accused was in the Navy at the time he committed the offense and also at the time of his trial. In determining that accused's discharge ended jurisdiction to try him for his offense, the Supreme Court pointed out that, until 1932, the services had uniformly been of the opinion that authority to try an individual by court-martial expired upon his separation from the service and was not revived by his entry upon another enlistment. The Court also adverted to the fact that the Navy, in 1932, adopted an administrative interpretation of the Articles for the Government of the Navy which resulted in its unilateral conclusion that discharge did not terminate jurisdiction to try an offender for crimes of the nature of which Hirshberg was convicted. The Court nevertheless concluded that, in the absence of contrary statutory authority, the longer-existing uniform service interpretation should be given controlling weight. Thus, it was held that a service member's discharge at the end of his period of obligated service ended jurisdiction to try him during a subsequent enlistment for any offense committed during the prior enlistment. As this accused occupies precisely the same position as Hirshberg, I believe that the cited Supreme Court decision is dispositive here.

The Chief Judge, in his separate opinion, however, argues that Hirshberg v Cooke, supra, no longer represents the law. He believes that the principle enunciated therein was voided by the enactment of Uniform Code of Military Justice, Article 3, 10 USC § 803, and that, in any event, the so-called *Hirshberg* rule was never applicable to charges involving fraudulent claims. See Article of War 94, 10 USC (1946 ed) § 1566, and Hirshberg v Cooke, supra, page 215.

I am unable to agree with the Chief Judge's view, for I am certain that Code, supra, Article 3 (a), was not intended entirely to eliminate the rule enunciated in the *Hirshberg* case. Congress was specifically informed of the

situation involved and undoubtedly enacted Code, supra, Article 3 (a), in order to insure continuance of jurisdiction in some circumstances. However, it also provided limits upon the exercise of military judicial power. The Article in question thus specifically excepts from the military's continuing jurisdiction those cases involving offenses punishable in the civil courts by imprisonment for five or more years. Pertinent legislative history makes it clear that Congress intended to continue the *Hirshberg* rule in effect with regard to the exempted class of offenses. In this respect, the following statements are indeed illuminating:

"Mr. BROOKS. Perhaps a limitation would be in order.

"Mr. SMART. Yes. I think it might be well for the committee to consider the possibilities of amending this article further to provide that court-martial *could try only those cases involving major offenses which were not triable in the civil courts.*

. . . . . .

"Mr. SMART. [Reading Article 3 (a)] . . . Now, that will get the Hirshberg case where he reenlisted. It would get Hirshberg even though he had not reenlisted." [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 883 and 1262.] [Emphasis supplied.]

"We felt that there was a solution to this [Hirshberg] problem and our proposed solution is offered in article 3(a) which is a committee amendment to H. R. 2498. It provides for a continuing jurisdiction provided the offense against this code is punishable by confinement of 5 years or more and provided further that the offense is not triable in a State or Federal court of the United States. *We feel that this will provide ample protection against any capricious action on the part of military authorities, will limit military jurisdiction to serious offenses that could not otherwise be tried by military or Federal courts and will likewise cor-*

*rect the absurd situation of permitting an honorable discharge to operate as a bar to a prosecution for murder or other serious offenses."* [House Report No. 491, 81st Congress, 1st Session, page 5.] [Emphasis supplied.]

Indeed, while it may be conceded that the Congressional purpose under the Code was to extend military jurisdiction beyond the limits existing under the Articles of War, it is also obvious that, in providing for that extension, they carefully and expressly restricted the area in which military courts might operate without regard to an accused's discharge. House Hearings, supra, page 1262; House Report, supra, pages 5, 11.

There can be no doubt that the accused's making of a fraudulent claim for travel allowances, although presented and paid in Korea, is an offense triable in a United States District Court and is punishable by confinement for five years. 18 USC § 287; United States v Bowman, 260 US 94, 43 S Ct 39, 67 L ed 149. Thus, it is apparent that his crime falls outside Code, supra, Article 3 (a), and no other basis can be found to continue military jurisdiction over it.

I deem equally fallacious the argument that the doctrine of Hirshberg v Cooke, supra, is inapplicable to fraud cases under the Code. Concededly, the Army never construed the Articles of War to require that a discharge terminate jurisdiction over a member of the service charged with committing a fraud upon the Government. The Chief Judge's contention, however, overlooks the fact that the Army's denial of that result in fraud cases was predicated on Article of War 94, supra, which expressly provided that court-martial jurisdiction was not ended in such cases by separation from the service. Not only was Article of War 94, supra, repealed upon the enactment of the Uniform Code of Military Justice, see section 14, Act of May 5, 1950, 64 Stat 108, et seq, 50 USC (1952 ed) § 551, et seq, but it is equally clear that its jurisdictional provision was swept within the ambit of Code, supra, Arti-

**645**

cle 3 (a). And, as noted before, crimes committed under the circumstances here involved do not fall within the class over which jurisdiction is now retained beyond discharge from the service.

Briefly then, it is my conclusion that the doctrine set forth in Hirshberg v Cooke, supra, requires us to decide that no jurisdiction existed over the offense committed by this accused in his prior enlistment. Fundamentally, Judge Latimer and I differ in whether the accused exercised his unconditional right to a discharge from his indefinite enlistment or whether he merely sought to substitute a different term in his obligation to remain in the Army. As indicated by the majority's result, that difference is material. I am also unable to subscribe to the Chief Judge's view that we may breathe new life into

Article of War 94 or disregard the boundaries carefully drawn by Congress around the authority conferred upon the armed services under Code, supra, Article 3 (a). I particularly desire to disassociate myself from any construction of our decision in United States v Gallagher, 7 USCMA 506, 22 CMR 296, which sustains continuing jurisdiction over a member of the armed forces unless all of the prerequisites set forth in Code, supra, Article 3 (a) are met. See United States v Wheeler, 10 USCMA 646, 28 CMR 212.

As I am of the opinion that the court-martial which tried the accused had no jurisdiction over the offense alleged in specification 1 of Charge I, I would answer the certified question in the negative, reverse the decision of the board of review, and order the specification dismissed.