UNITED STATES, Appellee

v

GEORGE W. STEIDLEY, Jr.,
Electronic Technician Chief, U. S. Navy, Appellant

14 USCMA 108, 33 CMR 320

No. 16,568

June 28, 1963

*Fred W. Shields, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel John L. Ostby,* USMC.

*Major Elvin R. Coon, Jr.,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Benjamin H. Berry,* USN.

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened by the Commander, U. S. Naval Forces, Japan, the accused pleaded guilty to seventeen specifications of larceny, four specifications of wrongful appropriation, and eight specifications of forgery, in violation, respectively, of Uniform Code of Military Justice, Articles 121 and 123, 10 USC §§ 921, 923. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for twelve months, and reduction. In conformance with a pretrial agreement, the convening authority reduced the amount of forfeitures to $65.00 per month, but otherwise approved the sentence. The board of review affirmed, and we granted accused's petition upon three issues, only one of which, in view of the disposition we order, need be considered.

The record reflects that the accused was discharged from the Navy on May 31, 1962, and reenlisted in the same

**109**

service on June 1, 1962. Among the many specifications and charges, we find counts alleging the following offenses:

*Charge I:*

Specification 1: Larceny of three flying jackets, of a value of about $63.75, on or about February 21, 1962.

Specification 2: Larceny of twelve bed sheets, of a value of $21.00, on or about February 21, 1962.

Specification 3: Wrongful appropriation of compression tester, of a value of about $19.00, on or about February 23, 1962.

Specification 4: Larceny of shoes, of a total value of about $17.00, on or about April 11, 1962.

Specification 5: Wrongful appropriation of two tire pressure gauges, of a value of $3.30, on or about March 21, 1962.

Specification 6: Larceny of recording tape, of a value of about $34.20, on or about May 31, 1962.

Specification 8: Wrongful appropriation of radio receiver, of a value of $1,500.00, on or about April 15, 1962.

Specification 9: Wrongful appropriation of paint sprayer, of a value of $65.80, on or about February 21, 1962.

Specification 10: Larceny of various items of linen, of a value of $14.55, on or about March 5, 1962.

Specification 11: Larceny of three electric fans, of a value of $54.00, on or about January 19, 1962.

Specification 13: Larceny of various tools, of a value of $124.08, on or about December 30, 1960.

Specification 14: Larceny of axe handle and hammer, of a value of $1.28, on or about February 16, 1961.

Specification 15: Larceny of various tools, of a value of $8.31, on or about September 19, 1961.

Specification 16: Larceny of various tools, shears, and padlocks, of a value of $73.82, on or about October 23, 1961.

Specification 17: Larceny of forceps, of a value of $8.00, on or about January 11, 1962.

Specification 18: Larceny of gloves, of a value of $2.10, on or about March 15, 1962.

Specification 20: Larceny of one frequency meter, of a value of $25.70, on or about February 23, 1962.

Specification 21: Larceny of described items of Government property other than those listed above, of a value of $160.03, from May 7, 1960, to July 9, 1962.

Specifications 7, 12, and 19 of Charge I allege larcenies which occurred after accused's reenlistment.

*Charge II:*

The eight specifications under this Charge allege forgeries of Government issue documents on varying dates between February 5, 1962, and April 3, 1962.

The decisive issue before us involves whether the court-martial had jurisdiction over the offenses charged against the accused. We are of the view that the answer is governed by Code, supra, Article 3, 10 USC § 803.

We have heretofore discussed Code, supra, Article 3, at length. See United States v Frayer, 11 USCMA 600, 29 CMR 416. In that case, we pointed out that the Article's rule concerning continuing jurisdiction grew out of the Supreme Court's decision in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530. We stated, at page 602:

". . . Article 3(a) . . . was intended by Congress to confer upon the military the power to prosecute an accused after re-enlistment for an offense committed before discharge, . . . [if] the offense be one which Congress intended to be prosecutable, notwithstanding the intervening discharge. See United States v Gallagher, 7 USCMA 506, 22 CMR 296, opinions by Chief Judge Quinn and Judge Ferguson. The offenses Congress had in mind were those which could be considered 'major' offenses. Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, page 881."

Thus, in order for jurisdiction over

an offense committed during a prior enlistment to survive discharge from the armed forces and reenlistment therein, the crime must be one which, in the words of the statute, is "punishable by confinement for five years or more and for which the person cannot be tried in the courts of the United States or of a State, a Territory, or the District of Columbia." United States v Frayer, supra; United States v Martin, 10 USCMA 636, 28 CMR 202; cf. United States v Noble, 13 USCMA 413, 32 CMR 413.

Under the bifurcated test laid down by the Congress in Code, supra, Article 3, it is certain that jurisdiction to try the specifications of Charge I, enumerated in detail above, did not continue beyond accused's discharge on May 31 and reenlistment on June 1. Specifications 2, 3, 4, 5, 6, 8, 9, 10, 14, 15, 17, 18, and 20 allege larcenies and wrongful appropriations which are not punishable by confinement for five years or more. And while specifications 1, 11, 13, and 16 aver larcenies punishable by confinement for five years, each of the these crimes is triable in a United States District Court despite the fact that they occurred in Japan. 18 USC § 641; United States v Bowman, 260 US 94, 67 L ed 149, 43 S Ct 39 (1922).

In the *Bowman* case, the Supreme Court pointed out that the extraterritorial application of Federal criminal statutes depends upon the intent of Congress in enacting the particular legislation. It went on to state that such intent might be inferred from the nature of the offense and, of the predecessor of 18 USC § 641, supra, it declared, at page 99:

". . . Again, in § 36 of chapter 4, it is made a crime to steal, embezzle, or knowingly apply to his own use ordinance, arms, ammunition, clothing, subsistence stores, money, or other property of the United States, furnished or to be used for military or naval service. It would hardly be reasonable to hold that if anyone, certainly if a citizen of the United States, were to steal or embezzle such property which may properly and lawfully be in the custody of Army or naval officers, either in foreign countries, in foreign ports, or on the high seas, it would not be in such places an offense which Congress intended to punish by this section."

As these offenses are, therefore, punishable in a United States court, Code, supra, Article 3(a), prevents accused's trial for them by court-martial during an enlistment subsequent to that in which they occurred, he having been discharged from the latter term of service. Specification 21 must, on the state of this record, be accorded different treatment. It purports to allege larceny of tools and other items "between 7 May 1960 and 9 July 1962." There is nothing in the record to indicate the date on which any particular item set forth in the specification was taken or to establish whether the theft occurred wholly during the prior enlistment, wholly in accused's current service obligation, or partially in both. Under the circumstances, we are unable to determine the extent to which the court-martial had jurisdiction over the alleged offense. The matter may be resolved by the taking of evidence and submission of the issue at the rehearing on sentence which, as hereinafter noted, we deem necessary. See United States v Ornelas, 2 USCMA 96, 6 CMR 96. If it is determined that the offense occurred in whole or in part during accused's existing enlistment, it may be considered appropriately by the court-martial in imposing punishment. If it is determined that it was committed during the prior term of service, the law officer may apply the principles enunciated herein and dismiss the specification.

It likewise appears that the court-martial lacked jurisdiction to try accused for the forgeries set out under Charge II, all of which occurred during his prior enlistment. Each of the eight counts alleges either a false alteration or utterance in connection with changes

made by the accused in Government requisition and issuance slips in order to facilitate certain of his larcenies. Each such offense is punishable by confinement at hard labor for five years. Again, therefore, as noted above, the question of continuing jurisdiction turns upon whether accused's misconduct, though occurring in Japan, is punishable in a civilian court in the United States. We conclude that it is.

Title 18, United States Code, § 494, provides:

"Whoever falsely makes, alters, forges, or counterfeits any bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit, or other writing for the purpose of defrauding the United States; or

"Whoever utters or publishes as true or possesses with intent to utter or publish as true, any such false, forged, altered, or counterfeited writing, knowing the same to be false, forged, altered, or counterfeited; or

"Whoever transmits to or presents at any office or to any officer of the United States, any such false, forged, altered, or counterfeited writing, knowing the same to be false, forged, altered, or counterfeited—

"Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

It will be seen that the foregoing legislation specifically provides for the trial and punishment of one who either falsely alters or utters any "public record, affidavit, or other writing for the purpose of defrauding the United States." Its object is to protect the general government against the consequences which might arise from the forgery, alteration, or counterfeiting of documents, records, or writings, which have some connection with its business, as conducted by its officers. Cross v State of North Carolina, 132 US 131, 33 L ed 287, 10 S Ct 47 (1889). These consequences would arise as easily from commission of these acts beyond the territory of the United States as if they were committed within its limits.

Where such is the case, the statutory offense falls within the limits prescribed in United States v Bowman, supra. Of such crimes, the Supreme Court there said, at page 98:

"But the same rule of interpretation should not be applied to criminal statutes, which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction or fraud, wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that, to limit their locus to the strictly territorial jurisdiction, would be greatly to curtail the scope and usefulness of the statute, and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense."

See also Blackmer v United States, 284 US 421, 76 L ed 375, 52 S Ct 252 (1932); Skiriotes v Florida, 313 US 69, 73, 85 L ed 1193, 61 S Ct 924 (1941); Vermilya-Brown Co. v Connell, 335 US 377, 381, 93 L ed 76, 69 S Ct 140 (1948); Foley Bros., Inc. v Filardo, 336 US 281, 93 L ed 680, 69 S Ct 575 (1949); Steele v Bulova Watch Co., 344 US 280, 97 L ed 319, 73 S Ct 252 (1952); Toth v Quarles, 350 US 11, 21, 100 L ed 8, 76 S Ct 1 (1955); and Chandler v United States, 171 F2d 921 (CA 1st Cir) (1948).

The false alteration and utterance of Government issue slips, it seems to us, clearly comes within the category described by the Court. Many facets of this Government's operations have been carried on beyond the limits of the United States from the day it became an independent nation. And, as is true

of every government, completion of its foreign tasks depends to a large extent upon the accuracy of its records and other writings. When they are forged, the injury to the body politic is the same whether the crime be committed in Washington, D. C., or Tokyo, Japan. With this country's current worldwide military commitments and the lack of court-martial jurisdiction over its many employees, the problem is even more acute. The case, therefore, is in nowise different from the specific crimes mentioned in the *Bowman* opinion, and we are of the view that Congress, in enacting 18 USC § 494, intended that its sanctions against forgery and utterance of public records and other writings be applied against United States citizens on a global scale.

For the reasons cited, the findings of guilty of specifications 1 through 6, 8 through 11, 13 through ■ 18, and 20 of Charge I, and those relating to Charge II and its specifications must be set aside and ordered dismissed. The accused is validly convicted only of Charge I and specifications 7, 12, and 19 thereunder, while the legality of the court's findings as to specification 21 requires further inquiry. In view of his prior, unblemished service for approximately twenty years and the extensive evidence in mitigation and extenuation, we entertain some doubt whether so severe a sentence would have been adjudged had only proper charges been presented. Cf. United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Middleton, 12 USCMA 54, 30 CMR 54. In the interests of justice, therefore, we direct a rehearing on the penalty, at which the jurisdictional issue as to specification 21 may be determined and the primary sentencing authority may arrive at an appropriate punishment uninfluenced by findings of guilty of counts not properly before it.

The decision of the board of review is reversed. The findings of guilty as to specifications 1 through 6, 8 through 11, 13 through 18, and 20 of Charge I and Charge II and its specifications are set aside and these counts are ordered dismissed. The record of trial is returned to The Judge Advocate General of the Navy. A rehearing on sentence is ordered, at which further inquiry into the jurisdictional basis of specification 21 may also be accomplished or, in the alternative, that count may be ordered dismissed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I disagree with the principal opinion for two reasons.

First, the evidence in the record before us is too weak and too uncertain to support the conclusion that the accused was given an unqualified discharge. The charge sheet shows he reenlisted on August 2, 1956, for six years. Consequently, his period of enlistment normally would expire on August 1, 1962. However, he reenlisted on June 1, 1962, for four years in order to go to a "new duty station." The circumstances support an inference that the accused asked for an early discharge and simultaneous reenlistment to further his personal interests. In United States v Noble, 13 USCMA 413, 32 CMR 413, we pointed out that substitution of a new, longer term of enlistment for an existing enlistment does not terminate military service so as to bar trial by court-martial for offenses committed in the substituted enlistment. In my opinion, further inquiry into the matter is required. Rule IX, F.2., Uniform Rules of Procedure for Proceedings in and Before Boards of Review.

Secondly, I disagree with the conclusion that the specifications of Charge II are triable in a Federal District Court. These specifications allege forgeries of Navy "REQUISITION/ISSUE" documents ("Nav. S. AND A. FORM 1093 (6PT) (REV. 9-59)"). Each forgery may, as the principal opinion indicates, constitute a violation of 18 USC § 494, but the accused was not charged with such violations. The requisition documents are set out in full in the respective specifications. Each shows it was signed by Chief Warrant Officer A. F. Manley. Consequently, Manley was apparently legally liable for the property. Thus, his legal

rights, not those of the United States, were affected by the accused forgeries. See United States v Addye, 7 USCMA 643, 23 CMR 107; cf. United States v Farley, 11 USCMA 730, 29 CMR 546. Forgery affecting an individual has no extraterritorial effect so as to make the offense triable in a Federal or state court. Cf. United States v Martin, 10 USCMA 636, 28 CMR 202. As to Charge II, therefore, the requirements for continuing jurisdiction under Article 3(a) of the Uniform Code, 10 USC § 803, are present. United States v Gallagher, 7 USCMA 506, 22 CMR 296.

I would return the record of trial to the board of review for consideration of the actual circumstances of the accused's discharge, and determination of the value of the property stolen by the accused during his present enlistment. If the board of review finds the accused's discharge was full and unconditional, it can dismiss the specifications alleging offenses committed in the previous enlistment. If it finds that the value of the property stolen in the current enlistment was less than that alleged in specification 21, Charge I, it can modify the findings of guilty. In any event, it can reassess the sentence on the basis of the findings of guilty of the approved specifications of Charge I and Charge II and its eight specifications.