UNITED STATES, Appellee

v

HORACE J. NOBLE, Jr., Master Sergeant, U. S. Air Force, Appellant

13 USCMA 413, 32 CMR 413

No. 16,079

December 21, 1962

*Major William A. Crawford, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Lieutenant Colonel John C. Wiley* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker, Lieutenant Colonel Simpson M. Woolf,* and *Major James Taylor, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

Appellant challenges the authority of the court-martial to try him for five specifications of misappropriation and larceny of funds belonging to the Air Force Aid Society, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921 (Charge II). He contends the court-martial lacked jurisdiction over these offenses because they were committed during a previous enlistment, and before he received an honorable discharge and re-enlisted in the Air Force.

Each of the offenses was committed before October 1960. Previous to that date the accused had twice applied for, and been granted, an extension of his original six-year enlistment. As a result, on the day of the commission of the last offense, he was obligated to serve until October 1962, instead of December 13, 1960, the date of the expiration of his original enlistment. However, on December 8, 1960, the accused applied for still another change in the term of his service. This time he asked for cancellation of the two

extensions and restoration of the original date of expiration so that he could re-enlist and obtain certain benefits that apparently were not available to him under the extensions of enlistment.

As part of the processing of the accused's application and to facilitate the adjustment of his financial records in the Finance Office, a discharge certificate was prepared and post-dated December 13, 1960. A report of discharge, which normally accompanies a discharge certificate, was also prepared and similarly post-dated. Neither instrument was delivered to the accused. On the day of the accused's request, a special order was issued providing for cancellation of the two extensions and for the issuance of an honorable discharge certificate. Cancellation of the extensions was expressly made "contingent upon" accused's re-enlistment on December 14, 1960. As provided in the orders, on December 14, 1960, the accused took the required oath of enlistment and obligated himself to serve for another six years. About a week later, the accused received the discharge certificate and all related papers in a "package deal." In September 1961, the charges in issue were preferred against the accused, and about a month later came up for trial before a general court-martial. At that time the accused moved to dismiss the charges, but the motion was denied.

The Uniform Code of Military Justice limits trial by court-martial to offenses in violation of the ██ Code and to persons made specifically subject to its provisions. Constitutionally, in the absence of martial law, civilians are not subject to trial by court-martial. Kinsella v United States, 361 US 234, 4 L ed 2d 268, 80 S Ct 297 (1960); Reid v Covert, 354 US 1, 1 L ed 2d 1148, 77 S Ct 1222. Thus, if a member of the armed forces commits an offense in violation of military law but is dis-

charged before court-martial proceedings are initiated, he cannot, while he remains a civilian, be tried by court-martial. Toth v Quarles, 350 US 11, 100 L ed 8, 76 S Ct 1. The accused, of course, does not fall into this class because he was on active duty both at the time of the offenses and at the time of the trial. Nonetheless, he contends that he was discharged, and his discharge absolved him from prosecution by court-martial for those crimes. See United States v Gallagher, 7 USCMA 506, 22 CMR 296; Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949).

Specifically, accused maintains that Article 3(a), Uniform Code of Military Justice, 10 USC § 803, requires reversal of the findings of guilty of the several specifications of Charge II. The Article provides that a person subject to the Uniform Code is not "relieved from amenability to trial by court-martial by reason of the termination" of his status, if the offense committed by him before such termination is punishable by confinement of five years or more and the offense is not triable in an American civilian court. The accused contends there is no court-martial jurisdiction over the offenses in issue because they are triable in a Federal district court as a violation of 18 USC § 641.[2] We need not examine the validity of this contention, which in part depends upon whether the Air Force Aid Society is an agency or instrumentality of the United States Government. See The Air Force Aid Society Manual, AFM 166–5, paragraphs 112, 301, and 417; Government Corporation Control Act, 31 USC §§ 846, 856, and 869; cf. Standard Oil Co. of California v Johnson, 316 US 481, 86 L ed 1611, 62 S Ct 1168; United States v Robinson, 6 USCMA 347, 20 CMR 63. In our opinion, the Article does not apply to the situation present in this case.

Normally, military status is termi-

---

[2] The two specifications of wrongful appropriation of which accused stands convicted would, according to the accused's argument, also be excluded because they are punishable by confine-ment for less than five years. See Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951, at page 223.

nated upon the concurrence of two conditions: (1) Execution of a discharge certificate or promulgation of appropriate orders of separation; and (2) delivery of the instrument providing for discharge, with the intention that it take effect according to its terms. United States v Wheeler, 10 USCMA 646, 28 CMR 212; United States v Brown, 12 USCMA 693, 31 CMR 279. Mere preparation of the instrument of discharge, without delivery thereof, does not terminate military status. United States v Griffin, 13 USCMA 213, 32 CMR 213. The evidence here shows unmistakably that on December 13, 1960, the two extensions of the accused's original enlistment were still in full force, since the order providing for their cancellation was not to take effect until the accused enlisted for another term. This circumstance distinguishes the instant case from United States v Solinsky, 2 USCMA 153, 7 CMR 29, in which a divided Court held that jurisdiction continued notwithstanding a discharge because under existing Army regulations a discharge followed by immediate re-enlistment was regarded as a continuous period of service. We need not, therefore, accept the accused's invitation to examine the continued vitality of the *Solinsky* case in regard to the effect of a qualified or conditional "hiatus or break in the service" of the discharged person. See United States v Martin, 10 USCMA 636, 28 CMR 202, opinion by Judge Latimer. This circumstance also serves to eliminate the starting point of the accused's assertion of lack of jurisdiction.

We start not with a discharge effectuated on December 13, 1960, but with an undertaking by the accused on December 14, 1960, to serve another extended enlistment. Cf. United States v Solinsky, supra, page 159. Looking at the transaction of December 14, it is clear that it accomplished two things: (1) It obligated the accused to serve for three years; and (2) in accordance with the terms of the order authorizing accused's re-enlistment, it cancelled the existing extensions of the original enlistment. Legally and factually, the new term of enlistment was a substitute for the original enlistment and its extensions. See United States v Johnson, supra, page 325. Manifestly, we are not dealing with an accomplished separation for the purpose of re-enlistment, but with the fact that there was no actual "termination" of accused's status as a person subject to military law. What then is the effect of the discharge certificate? It is argued that it is " 'an authoritative declaration by . . . [the Government] that . . . [the serviceman] had *left the service in a status of honor.*' " (Emphasis supplied.) United States v Kelly, 15 Wall 34, 36 (U. S. 1873). This is true in the absence of other circumstances. But, the certificate is not a pardon for offenses actually committed before its issuance. United States v Landers, 92 US 77, 23 L ed 603 (1876). And in this case, the evidence shows that the certificate is only part of a number of documents which compellingly indicate there was no termination of military service. We conclude, therefore, that the court-martial had jurisdiction over all the specifications of Charge II.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

I cannot agree with the subtle reasoning of my brothers, for I believe it disregards the statutory enactment in Uniform Code of Military Justice, Article 3, 10 USC § 803, of a limited version of the rule laid down by the Supreme Court in Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949). In my opinion, when a member of the service ends one period of obligation and begins to serve under another—regardless of how the change is effectuated—the provisions of Code, supra, Article 3, come into play and govern the exercise of jurisdiction over offenses committed during the prior period.

Master Sergeant Noble enlisted in the Air Force on December 14, 1954, for a term of six years. He arrived overseas in October 1958, and, in order

to qualify for transportation of his dependents to his station, voluntarily executed an extension of his enlistment for a period of eleven months. He subsequently again extended his enlistment for a similar period, thereby deferring his enlistment to discharge until October 13, 1962.

On December 8, 1960, he applied for cancellation of the extension and restoration of the original date of discharge—December 13, 1960—in order that he might re-enlist for another term and avail himself of certain administrative advantages. His request was granted, conditioned upon his actual re-enlistment. Orders to that effect were prepared and issued on December 8.

On December 14, 1960, accused complied with the condition by re-enlisting in the Air Force for the term specified. The extensions were accordingly cancelled and his discharge thereby effected. Several days later, his discharge certificate and related papers—all of which had actually been prepared prior to December 14—were delivered to him. The certificate relates his honorable separation from the Air Force on December 13, 1960.

The offenses with which we are concerned involve three specifications of larceny and two specifications of wrongful appropriation of funds belonging to the Air Force Aid Society, all in violation of Code, supra, Article 121, 10 USC § 921. Each occurred prior to cancellation of accused's extensions and his re-enlistment. Charges were not preferred until September 5, 1961, many months after delivery of his discharge certificate. The question before us, therefore, is whether such change in his obligation to serve terminated jurisdiction to try him for these crimes.

Any consideration of this issue necessarily begins with an examination of the decision of the Supreme Court in Hirshberg v Cooke, supra. There, a Navy enlisted man was discharged on March 26, 1946, and re-enlisted, effective March 27, 1946. Subsequently brought to trial and convicted of offenses occurring during his prior enlistment, he sought his release on the ground that jurisdiction over the crimes expired upon the ending of his obligation to service and was not revived by his re-enlistment. In holding that his discharge and re-enlistment should be accorded that effect, the Supreme Court pointed out the armed forces had long so construed applicable statutes. It held, therefore, that discharge ended jurisdiction over offenses committed during an enlistment thus terminated and that it was not restored by contemporaneous re-enlistment.

The so-called *Hirshberg* rule was brought to the attention of Congress and extensively discussed during the Committee hearings on the Uniform Code. At first, it was suggested that the Supreme Court's construction of then extant statutes be legislatively eliminated. Subsequently, however, Congress determined that it should be overturned only as to major offenses. Thus, the following extracts from the Code's legislative history are illuminating:

"Mr. BROOKS. Perhaps a limitation would be in order.

"Mr. SMART. Yes. I think it might be well for the committee to consider the possibilities of amending this article [Code, supra, Article 3, 10 USC § 803] further to provide that court martial could try only those cases involving major offenses which were not triable in the civil courts.

. . . . .

"Mr. SMART. [Reading Article 3(a)] . . . Now, that will get the Hirshberg case where he re-enlisted. It would get Hirshberg even though he had not reenlisted." [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 883, 1262.]

"We felt that there was a solution to this [Hirshberg] problem and our proposed solution is offered in article 3(a) which is a committee amendment to H. R. 2498. *It provides for a continuing jurisdic-*

*tion provided the offense against this code is punishable by confinement of 5 years or more and provided further that the offense is not triable in a State or Federal court of the United States. We feel that this will provide ample protection against any capricious action on the part of military authorities, will limit military jurisdiction to serious offenses that could not otherwise be tried by military or Federal courts and will likewise correct the absurd situation of permitting an honorable discharge to operate as a bar to a prosecution for murder or other serious offenses.* [House Report No. 491, 81st Congress, 1st Session, page 5.] [Emphasis supplied.]

The mentioned statute, Code, supra, Article 3(a), upon enactment, contains precisely those limitations envisioned by the Committee. Thus, it provides:

". . . [N]o person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, *punishable by confinement for five years or more and for which the person cannot be tried in the courts of the United States or of a State, a Territory, or the District of Columbia,* may be relieved from amenability to trial by court-martial by reason of the termination of that status." [Emphasis supplied.]

From the foregoing, I would conclude that Congress has carefully set down the rule which must govern jurisdiction over offenses in situations like that before us. If the offense is punishable by five years or more and not triable in an American civil court, jurisdiction continues in the military judicial system. Otherwise, the termination of one enlistment and the beginning of another—regardless of the attendant circumstances—ends power to try the accused for what he did before the end of his earlier period of service. Hirshberg v Cooke, supra; my opinion, United States v Martin, 10 USCMA 636, 28 CMR 202. In short, as the Chief Judge declared in his dissenting opinion in United States v

**418**

Solinsky, 2 USCMA 153, 7 CMR 29, at page 161:

". . . I read Hirshberg to say that once an enlisted man has been discharged from the armed forces, that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by applicable statute. I find no statutory provision—and the majority cites none—that is applicable here."

Turning to the facts of the case before us, it is at once apparent that three of the specifications involved meet the conditions laid down by Congress in Code, supra, Article 3. Each alleges larceny of funds belonging to the Air Force Aid Society at Misawa Air Force Base, Japan, in amounts exceeding $50.00. Each of these crimes is punishable, in addition to accessorial penalties, by confinement at hard labor for five years. Manual for Courts-Martial, United States, 1951, paragraph 127c. The owner of the funds was a private eleemosynary organization incorporated under the laws of the District of Columbia. Air Force Manual 166–5, The Air Force Aid Society, paragraphs 112, 301, 417. The alleged thefts accordingly involved property of a private corporation overseas and would not be cognizable in the civil courts in this country. Cf. United States v Bowman, 260 US 94, 67 L ed 149, 43 S Ct 39. Hence, each prerequisite for continuation of jurisdiction has been met, and accused was properly brought to trial for these offenses.

With regard to the remaining counts, charging wrongful appropriation of funds in excess of $50.00 belonging to the same Society, I would reach the opposite conclusion. Here, Code, supra, Article 3, does not come into play, for the alleged offenses are not punishable by confinement for five years or more. Hence, there is lacking the essential statutory ingredient for trying accused after his discharge and re-enlistment, and I would set aside the findings of guilty with respect to these specifications.

My brothers nevertheless find jurisdiction over all the crimes involved.

They do so on the basis that the accused in actuality did not re-enlist in the Air Force but merely once more extended his original enlistment. In light of the facts set out above, I respectfully suggest that the argument is quite without foundation.

In the first place, accused's request was not for another extension but for cancellation of existing extensions and execution of another, regular enlistment. The extensions were expressly so cancelled on December 8, pursuant to that request, and such action was made "contingent upon his *reenlistment* in the RegAF on 14 Dec 60," a condition which he fully satisfied. (Emphasis supplied.) Moreover, the orders published on December 8 expressly directed his honorable discharge "effective 13 Dec 60, contingent upon his reenlistment in the RegAF on 14 Dec 60." And, after such re-enlistment was accomplished, a regularly executed and valid discharge certificate was delivered to him months prior to the preference of the charges. Finally, in accordance with current service directives, accused was paid for his accrued leave and received travel pay to his home of record, none of which could have been given him upon an extension of his original obligation to serve.

If the foregoing circumstances are not enough to demonstrate the invalidty of my brothers' argument, I call attention also to the fact that the personnel specialist who processed accused's request for separation and re-entry testified that Noble was discharged *at the expiration of his term of service* and re-enlisted the following day, although, in accordance with normal practice, delivery of the discharge was withheld until the re-enlistment had been completed.

The truth of the matter is that this case involves no more than the normal discharge and re-enlistment procedure. While accused might have been held to his earlier extensions by the Air Force, the fact is that he was not. In my opinion, therefore, they became irrelevant, and we should simply apply the terms of Code, supra, Article 3(a). United States v Frayer, 11 USCMA 600, 29 CMR 416. When we do not, we further confuse those whom we should guide in the area of jurisdiction, and leave this important question to be decided *ad hoc*. As the Chief Judge noted in *Solinsky*, supra, at page 161:

"It is immaterial, I think, that there may be persuasive policy arguments in support of the result reached by the majority. We are here concerned with courts-martial, special tribunals whose jurisdiction must be found solely within the confines of the statutes creating them. If jurisdiction is not conferred by statute, then it matters not that it should be conferred."

I would reverse the decision of the board of review and order the two specifications of wrongful appropriation dismissed, returning the record of trial for reassessment of the sentence in light of such action.