UNITED STATES, Appellee

v

ISAIAH V. GINYARD, Specialist Four,
U. S. Army, Appellant

16 USCMA 512, 37 CMR 132

*Captain Frank J. Martin, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Lieutenant Colonel Jacob Hagopian.*

*Captain Anthony L. Tersigni* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Augsburg, Germany, charged with six specifications of making false military pay vouchers for the payment of claims against the United States, in violation of Article 132, Uniform Code of Military Justice, 10 USC § 932. He pleaded guilty and was sentenced to confinement at hard labor for one year and reduction to the grade of E–1. The convening authority approved the adjudged sentence. A board of review in the office of the Judge Advocate General of the Army affirmed the findings of guilty but determined, on the basis of the entire record, that only so much of the sentence as provides for confinement at hard labor for six months and reduction to the grade of E–1 was appropriate.

We granted the appellant's petition for review to consider his claim that the court-martial did not have jurisdiction because the offenses charged were allegedly committed prior to his honorable discharge and do not survive the bifurcated test of Article 3(a); Uniform Code of Military Justice, 10 USC § 803.

As reflected by a stipulation of fact entered into the record of trial, the alleged offenses occurred during the period October 27, 1964, to January 12, 1965. Prior to pleading, defense counsel moved for dismissal of all charges and specifications on the ground that the court lacked jurisdiction to try the appellant for these offenses since they occurred during a period of prior enlistment, citing our opinion in United States v Steidley, 14 USCMA 108, 33 CMR 320. In support of his motion, counsel asserted that the appellant was honorably discharged on March 8, 1965, and reenlisted the following day, and since the offenses are triable in a United States District Court, under Section 1001, Title 18, U. S. Code, the provisions of Article 3(a), supra, are applicable and the court-martial was without authority to proceed.

The prosecution acknowledged the correctness of the discharge and reenlistment data and the fact that the offenses are triable in a United States District Court, but maintained that since the appellant was given a short term discharge under AR 635–205 it did not sever his prior service and he remained subject to court-martial jurisdiction.

The law officer, in denying the defense motion, agreed that "a short term discharge to effect a reenlistment pursuant to army regulations is not subject to Article 3(a) and therefore there is a continuing jurisdiction."

The question before us is not new. It was initially considered in United States v Solinsky, 2 USCMA 153, 7 CMR 29, and most recently decided in United States v Steidley, supra. In the interim, various facets of the same question were before this Court. See generally: United States v Noble, 13 USCMA 413, 32 CMR 413; United States v Griffin, 13 USCMA 213, 32 CMR 213; United States v Brown,

**513**

12 USCMA 693, 31 CMR 279; United States v Scott, 11 USCMA 646, 29 CMR 462; United States v Frayer, 11 USCMA 600, 29 CMR 416; United States v Martin, 10 USCMA 636, 28 CMR 202; United States v Gallagher, 7 USCMA 506, 22 CMR 296. In that connection, see also, Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530 (1949); Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 881, 883, 1262; House Report No. 491, 81st Congress, 1st Session, page 5; Article 3(a), Uniform Code of Military Justice, 10 USC § 803.

In the case at bar, there appears to be disagreement over the import of our holdings on this question, the various contentions centering mainly around United States v Noble and United States v Steidley, both supra, with reference to the other cited cases in support of jurisdiction or lack thereof depending upon the position of the advocate. The staff judge advocate to the convening authority, citing Steidley, initially advised the latter that, in his opinion, "military jurisdiction over the offenses presently alleged against the accused terminated upon the accused's discharge on 8 March 1965—regardless of the reasons motivating the discharge." His recommendation that "the case be submitted through the Commander in Chief, USAREUR (ATTN: AEAJA), to the Adjutant General, Department of the Army, pursuant to the provision of paragraph 8e, USAREUR Regulation 22–5, requesting that the accused be transferred to the continental United States for trial before an appropriate United States District Court," was approved by the convening authority on August 28, 1965. Headquarters USAREUR, citing Noble, did not agree and returned the case to the convening authority for further consideration. The acting staff judge advocate again advised the convening authority he believed that the military court lacked jurisdiction to try the accused since, in his opinion, Steidley, which was decided subsequent to Noble, announced a change in the law and was therefore controlling. In addition, he found the factual setting of Steidley and the case at bar to be exactly the same. He recommended that the convening authority dismiss the charges for lack of jurisdiction but advised him that "the final pretrial decision as to whether there is jurisdiction over the offenses in question is your own." That decision is apparent from the fact of this trial.

Before the board of review and in this Court, the defense has continued to rely on Steidley for the claim of lack of jurisdiction. The Government, citing Noble and Solinsky, has contended otherwise.

The board of review found sufficient factual difference between Noble and Steidley to conclude that the decision in Noble was controlling in this case. It also stated that "we further believe that had it been the intention of the Court of Military Appeals to overrule Noble and the line of cases commencing with Solinsky, in Steidley, it would have specifically done so, especially in view of the fact that Noble and Steidley were decided within in approximately six months of one another. This it did not, in our opinion, do."

The fact overlooked by the board of review in its analysis of Noble is that Noble presented a special case. As the majority opinion therein points out, at the time he applied for a change in the term of his service, Noble already was serving the second of his two extensions of his original enlistment. He desired cancellation of the extension and restoration of the original date of expiration. Because of the peculiar nature of the situation a "special" order was issued which provided that the cancellation of the extensions was expressly made "contingent upon" Noble's reenlistment. As the Chief Judge pointed out in Noble, at page 416:

"... The evidence here shows unmistakably that on December 13, 1960, the two extensions of the accused's original enlistment were still in full force, since the order providing for their cancellation was not to take effect until the accused

enlisted for another term. This circumstance distinguishes the instant case from United States v Solinsky, 2 USCMA 153, 7 CMR 29, in which a divided Court held that jurisdiction continued notwithstanding a discharge because under existing Army regulations a discharge followed by immediate re-enlistment was regarded as a continuous period of service. We need not, therefore, accept the accused's invitation to examine the continued vitality of the *Solinsky* case in regard to the effect of a qualified or conditional 'hiatus or break in the service' of the discharged person. See United States v Martin, 10 USCMA 636, 28 CMR 202, opinion by Judge Latimer. This circumstance also serves to eliminate the starting point of the accused's assertion of lack of jurisdiction.

"We start not with a discharge effectuated on December 13, 1960, but with an undertaking by the accused on December 14, 1960, to serve another extended enlistment. Cf. United States v Solinsky, supra, page 159. Looking at the transaction of December 14, it is clear that it accomplished two things: (1) It obligated the accused to serve for three years; and (2) in accordance with the terms of the order authorizing accused's re-enlistment, it cancelled the existing extensions of the original enlistment. Legally and factually, the new term of enlistment was a substitute for the original enlistment and its extensions. See United States v Johnson, supra, page 325. Manifestly, we are not dealing with an accomplished separation for the purpose of re-enlistment, but with the fact that there was no actual 'termination' of accused's status as a person subject to military law."

In *Steidley*, however, the factual situation presented the possibility that accused had received either an unqualified discharge, or, as Judge Quinn stated in his dissenting opinion, "The circumstances support an inference that the accused asked for an early discharge and simultaneous reenlistment to further his personal interests." (*Ibid.* at page 113.) Nevertheless, we were not there faced with the "special" situation found in *Noble* and the majority held that jurisdiction to try Steidley for certain of the offenses charged against him did not continue beyond his discharge on May 31st and his reenlistment on June 1st.

It is apparent that the disagreement between counsel on this issue stems from an attempt to determine the specific factual situations in each case and to relate them to particular military regulations. It is equally obvious that if misunderstanding is to be avoided in the future a simple rule of easy interpretation is necessary.

In his dissent in *Solinsky*, the Chief Judge declared:

"In my opinion, United States ex rel Hirshberg v Cooke, 336 US 210, 93 L ed 621, 69 S Ct 530, is controlling here. I read Hirshberg to say that once an enlisted man has been discharged from the armed forces, that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by applicable statute. I find no statutory provision—and the majority cites none—that is applicable here.

"It is immaterial, I think, that there may be persuasive policy arguments in support of the result reached by the majority. We are here concerned with courts-martial, special tribunals whose jurisdiction must be found solely within the confines of the statutes creating them. If jurisdiction is not conferred by statute, then it matters not that it should be conferred." [*Ibid.* at page 161.]

Judge Ferguson, in his dissent in *Noble*, asserted his adherence to the above-quoted remarks of Judge Quinn and declared that:

". . . Congress has carefully set down the rule which must govern jurisdiction over offenses in situations like that before us. If the offense is punishable by five years or more and not triable in an Amer-

ican civil court; jurisdiction continues in the military judicial system. Otherwise, the termination of one enlistment and the beginning of another—regardless of the attendant circumstances—ends power to try the accused for what he did before the end of his earlier period of service." [United States v Noble, 13 USCMA 413, at page 418.]

This, then, is the rule to be followed: *Once an enlisted man has been discharged from the armed forces, that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by Article 3(a) of the Code, supra.*

In the case at bar, we hold that our opinion in *Steidley* is applicable and that the court-martial did not have jurisdiction to try the accused for the charged offenses.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The charges are ordered dismissed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):
Since the majority rely, at least in part, on my *Solinsky* dissent, I find myself in the anomalous and awkward position of having to disagree with them. I wish it were otherwise, but they misconstrue and misapply my views.

To me, *Noble* is not an aberrant case outside the ambit of my dissent in *Solinsky*. The point of difference between *Solinsky* and *Noble* is the simple fact that Solinsky was actually given an unconditional discharge on one day, and reenlisted on the next. There was no evidence in *Solinsky* to indicate the discharge was not intended to take immediate effect according to its terms. See 2 USCMA, at page 153. On the other hand, Noble was never unconditionally separated from the service. He obligated himself to a new term of years before his existing term ended; then, and only then, was he released from his previous obligation. As a result, there was never

"an accomplished separation" and "[l]egally and factually, the new term of enlistment was a substitute for the original enlistment and its extensions." 13 USCMA, page 416.

Whether the accused actually received an unconditional discharge, intended to take immediate effect, was also the point of disagreement in United States v Steidley, 14 USCMA 108, 33 CMR 320. There, the majority concluded the accused was, in fact, discharged on May 31, 1962, and reenlisted on the next day. *Id.*, pages 109–110. In my opinion, the evidence was "too weak and too uncertain to support the conclusion that the accused was given an unqualified discharge." *Id.*, page 113. For that reason, I voted to return the record of trial to the board of review for further inquiry into the matter.

The evidence in this case convinces me the accused was not given an unconditional discharge on March 8. I agree with the majority's unarticulated premise that the fact the accused received a "short term discharge," that is, a discharge prior to the regular date of expiration of the enlistment, is not controlling. However, unlike them, I think the intention of the parties is extremely important in determining the legal effect of what they did. As we observed in *Noble*, before an instrument has legal consequence it must be delivered "with the intention that it take effect according to its terms." 13 USCMA, page 416.

Here, the accused testified on the jurisdictional issue. He stated that while on duty in the United States he wanted to be transferred to Europe, with his dependents. The time remaining on his enlistment was too short to permit such assignment. Accordingly, he signed "an intent to reenlist." Actual "reenlistment" was accomplished in Germany. He admitted he knew that enlargement of his time of service was a "condition precedent" to his "discharge." He also admitted he "understood" his discharge "was qualified" by the specific requirement that he extend his term of service by reenlistment. It indisputably appears,

therefore, the parties intended that no actual separation from the service be effected. Thus, the factual situation is substantially similar to that in *Noble*. On the authority of that case, jurisdiction was present to try the accused for the offenses in issue.

There is also another reason that requires me to part company with my brothers. The accused was charged with frauds against the Government. In United States v Martin, 10 USCMA 636, 28 CMR 202, I pointed out that, as early as 1863, frauds against the Government committed in one enlistment were prosecutable in a later enlistment. I expressed the opinion that this rule was not changed by Article 3(a) of the Uniform Code of Military Justice, 10 USC § 803, which was intended by Congress to enlarge, not restrict, military jurisdiction in a situation of the kind present here. I am not persuaded by more recent research, or by anything said by the majority, that my opinion in *Martin* was wrong. I would, therefore, also sustain the exercise of jurisdiction on that ground.