**UNITED STATES**

v.

**Staff Sergeant Bobby E. JUSTICE, FR 331–28–4017 Headquarters, 51st Composite Wing Fifth Air Force (PACAF).**

**ACM 22091.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 24 May 1976.

Decided 23 Dec. 1976.

---

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Captain David A. Bateman. Captain Daniel J. Wacker filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain William T. Snyder.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

### LeTARTE, Chief Judge:

Consonant with his pleas, the accused was convicted of eight specifications of receiving bribes, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and was sentenced to bad conduct discharge, reduction in grade to airman basic and a fine of $6,000.00.

The assistant trial defense counsel has submitted an excellent brief which has been incorporated by reference into appellate defense counsel's assignment of errors and which urges us to conclude:

THE MILITARY JUDGE ERRED IN OVERRULING THE DEFENSE MOTION TO DISMISS SPECIFICATIONS 1, 2, 3, 5, 6, 7, and 8 ON THE GROUNDS THAT THE COURT–MARTIAL LACKED JURISDICTION OVER THE SUBJECT MATTER BY REASON OF THE ACCUSED'S DISCHARGE FROM THE AIR FORCE AFTER THE COMMISSION OF OFFENSES ALLEGED IN THOSE SPECIFICATIONS.[1]

We agree in part.

The relevant circumstances indicate that beginning on 1 January 1975, and extending through 5 October 1975, the accused received a series of payments from Korean contractors representing companies "engaged in contract business with the United States . . . in recognition of services rendered or to be rendered . . . in relation to [official matters] in which the United States was . . . interested, to wit: the procurement of materials [Specifications 1, 3–8] [and] the rehabilitation of military buildings [Specification 2]." During this period, the accused was assigned to the Osan Air Base, Korea, Procurement Office as Chief, Supplies Services Branch, and the payments received were "in exchange for favors in awarding government contracts to the Korean contractors."

The evidence pertinent to the jurisdictional issue reveals that on 14 August 1971, the accused re-enlisted in the Air Force for a term of four years and that the expiration of his term of service (ETS) was established as 13 August 1975. On 30 April 1974, the accused's request for extension of his ETS until 13 January 1976, was approved. However, on 14 August 1975, the accused was permitted to re-enlist for a term of three years and was thereafter presented with an honorable discharge certificate, dated 13 August 1975, which had been withheld pending his submission of a signed re-enlistment contract.

■ Based on these circumstances, we find that the Air Force lacked jurisdiction to prosecute the accused for those offenses occurring prior to his re-enlistment on 14 August 1975.

In *United States v. Ginyard*, 16 U.S.C. M.A. 512, 37 C.M.R. 132 (1967), a divided Court of Military Appeals formulated the following rule:

*Once an enlisted man has been discharged from the armed forces, that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by Article 3(a) of the Code, supra.*

This rule effectively adopted the position taken by Judge Ferguson in his dissent in *United States v. Noble*, 13 U.S.C.M.A. 413, 32 C.M.R. 413 (1962), wherein he asserted:

Congress has carefully set down the rule which must govern jurisdiction over offenses in situations like that before us. If the offense is punishable by five years or more and not triable in an American civil court, jurisdiction continues in the military judicial system. Otherwise, the

---

1. The maximum penalty provided for each of these offenses includes confinement at hard labor for three years. Manual for Courts-Martial, 1969, paragraph 127c (Table of Maximum Punishments), page 25–15.

termination of one enlistment and the beginning of another—*regardless of the attendant circumstances*—ends power to try the accused for what he did before the end of his earlier period of service. [Emphasis supplied.]

The stated purpose of this rule was to avoid confusion resulting from attempts "to determine the specific factual situations in each case and to relate them to particular military regulations," as had occurred in *Ginyard* and several of the Court's prior decisions. *United States v. Ginyard, supra,* at page 135.

Despite this "simple rule," as so described by Judge Kilday in *Ginyard,* the Government contends that prosecution of the accused in the instant case for *all* of his offenses is justified on the basis of the Court's earlier decision in *Noble, supra.* There, Noble was serving the second of two extensions of his original enlistment when, at his request, the extensions were cancelled pursuant to a special order providing that the cancellation was contingent upon his re-enlistment. On these facts, the Court found that Noble's status as a person subject to military law was not terminated by his re-enlistment since "[l]egally and factually, the new term of enlistment was a substitute for the original enlistment and its extensions."

Noting the similarity between Noble's situation and the accused's herein, the convening authority's staff judge advocate, whose argument was adopted by appellate Government counsel for purposes of the accused's appeal, stated his opinion that *Ginyard* did not overrule *Noble.* He reasoned that since the accused, like Noble, was obligated to serve an additional period because of the voluntary extension of his ETS, and because cancellation of the extension was contingent upon his re-enlistment, there was no "accomplished separation for the purpose of re-enlistment," as in "*Gin-*

*yard.  United States v. Noble, supra,* at page 416. Accordingly, on the basis that the accused's case is to recognized exception to the general rule enunciated in *Ginyard,* the staff judge advocate concluded that the military judge properly denied the defense motion to dismiss the affected specifications.

Our disagreement with the staff judge advocate's conclusion is twofold. First, we do not agree that the accused here was serving an extension of his enlistment when he re-enlisted, as was Noble. Air Force regulations provide that "in lieu of entering the extension period," an extension of enlistment may be "offset" prior to entry through immediate ETS re-enlistment at the time of the *original* ETS.[2] In this respect, re-enlistment without a break in service is accomplished on the day following expiration of the serviceman's term of service.[3] Consequently, by re-enlisting on 14 August 1975, the day following his original ETS, the accused never entered his enlistment extension period.

Secondly, and of even greater significance, it is our opinion that the *Ginyard* rule was intended to supersede all of the Court's prior opinions relative to this jurisdictional issue. In other words, there are no exceptions to the rule,[4] For this reason, our finding that the accused had not in fact entered the extension of his re-enlistment is immaterial.

To repeat, once an enlisted man has been discharged, he cannot be tried by a military court for an offense occurring prior to that discharge, "regardless of the attendant circumstances," unless such offense is punishable by confinement for five years or more and cannot be tried in one of the courts enumerated in Article 3(a), Code, supra. *No other factor need be considered.* In the case before us, therefore, the court

---

2. Air Force Regulation 35–16, USAF CAREER MOTIVATION PROGRAM, 30 May 1975, Volume I, paragraphs 8–8 and 8–9b.

3. See AFR 35–16, supra, paragraph 7–11.

4. Our opinion in this respect includes not only the type of "special case" considered in *Noble,* supra, but also frauds against the Government. See dissenting opinion of Judge Ferguson in *United States v. Martin,* 10 U.S.C.M.A. 636, 28 C.M.R. 202, 211–212(1959).

lacked jurisdiction over those offenses committed before 14 August 1975. These include the offenses alleged in Specifications 1, 2, 3, 5, and 6 in their entirety and Specifications, 7 and 8 in part. As to the latter two specifications, a stipulation of fact introduced at trial reflects that the accused received $200.00 in September 1975 and 50,-000 Won (approximately $104.00) on 5 October 1975 (Specification 7) and $2,000.00 on 21 September 1975 (Specification 8).

One of the issues independently raised by appellate defense counsel merits our attention. Counsel avers:

THE MILITARY JUDGE ERRED IN PROVIDING INSTRUCTIONS ON RECONSIDERATION OF SENTENCE.

We agree but decline to grant the relief requested.

Following sentencing deliberations, the court opened and the president stated that the members had arrived at a sentence. Without permitting the president to announce the sentence, the military judge examined the sentence work sheet and determined that the court had sentenced the accused to a bad conduct discharge, total forfeitures, reduction to airman basic and a fine of $5,000.00. At this point, the military judge instructed the court, as he had earlier, that a fine *and* forfeiture could not be imposed and added that the court could reconsider these provisions if the appropriate number of members voted in favor thereof.

■ It is evident to us that the military judge misconstrued the law pertaining to imposition of fines along with or in addition to forfeitures. Prior to the effective date of the 1969 Manual for Courts-Martial, military courts could not adjudge a fine and

forfeiture in cases involving enlisted personnel. Manual for Courts-Martial, United States, 1951, paragraph 126*h*(3) and paragraph 127*c*, Section B, page 228.[5] However, the pertinent Manual provisions cited above were amended to permit general courts-martial to impose fines in addition to forfeitures in appropriate cases, normally those in which the accused was unjustly enriched as a result of the offense of which he was convicted. Manuals for Courts-Martial, United States, 1969 and 1969 (Rev.), paragraph 126*h*(3) and paragraph 127*c*, Section B, page 25–18.[6]

This change was not incorporated into Air Force Manual 111–2, Court-Martial Instructions Guide, dated 15 October 1971 (current edition). Instead, the relevant instruction (paragraph 6–33a, AFM 111–2) contains the following note pertaining to "Additional Instructions on Kind and Amount of Punishment:"

Note: When the accused is an enlisted person, the following should be added: "If you impose a fine, you may not impose a forfeiture."

Obviously, this instructional provision led the military judge to inform the court that it could not impose a fine and a forfeiture. As shown above, however, this instruction is patently erroneous under current military law. Accordingly, the court's first sentence, including total forfeitures and a $5,000.00 fine, was legally authorized.[7]

■ With these considerations in mind, we must determine the legal effect of the court's sentence reconsideration. We are satisfied, initially, that the procedure in question cannot be equated to that provided in paragraph 76*d* of the Manual for sentence reconsideration when proposed by a

---

5. See *United States v. Landry*, 14 U.S.C.M.A. 553, 34 C.M.R. 333 (1964); *United States v. Hounshell*, 7 U.S.C.M.A. 3, 21 C.M.R. 129 (1956).

6. See Air Force Summary of Changes in the Manual for Courts-Martial, 1969, Chapter XXV, Punishments, paragraph 126*h*(3), page 50, which states:

This subparagraph [paragraph 126*h*(3)] and the fourth paragraph of Section B, 127*c*, as

now written, make a fine when adjudged by a general court-martial a truly additional punishment.

7. Furthermore, we are unaware of any Air Force policy restricting the imposition of fines and forfeitures in general courts-martial involving enlisted personnel. Usually, Air Force policies affecting sentence limitations are set forth in Air Force Manual 111–1, Military Justice Guide, Chapter 7.

member of the court. Manifestly, the reconsideration in this instance was *directed* by the military judge on the basis of his belief that the sentence was illegal. *United States v. Linder*, 6 U.S.C.M.A. 669, 20 C.M.R. 385 (1956); see Manual for Courts-Martial, 1969 (Rev.), paragraph 76*c*. And in view of our finding that the sentence was not irregular in any aspect, sentence correction was unnecessary.

Moreover, the military judge erred in advising the court that it could reconsider the sentence and either reduce *or increase* it, dependent upon the number of members voting for reconsideration. There is no provision in military law that permits a court to reconsider its sentence for the purpose of increasing the severity of the punishment imposed unless the sentence prescribed for the offense of which the accused has been convicted is *mandatory*. Article 62(b)(3), Code, supra; Manual for Courts-Martial, ibid, paragraph 76*c*; see *United States v. Kuzilik*, 49 C.M.R. 525, 527 (A.F.C.M.R. 1974); *United States v. Long*, 4 U.S.C.M.A. 101, 15 C.M.R. 101 (1954). This rule applies whether the sentence reconsideration is initiated by the military judge under paragraph 76*c* of the Manual or by the court on its own motion under paragraph 76*d*. In the latter case, the Manual clearly provides that reconsideration of a sentence by the court is subject to the same provisions pertaining to the former. Manual for Courts-Martial, ibid, paragraph 76*d*.

■ In the case before us, we cannot affirm the unannounced sentence originally intended by the court even though that sentence was perfectly legal. We can, nonetheless, approve the announced sentence *insofar as it does not exceed the legal equivalent of the first*. Article 62(b), Code, supra: see *United States v. Castner*, 3 U.S. C.M.A. 466, 13 C.M.R. 22 (1953); *United States v. Long*, supra.

■ In this respect, appellate defense counsel contend, citing *United States v. Cuen*, 9 U.S.C.M.A. 332, 26 C.M.R. 112 (1958), that a fine is "clearly the more severe form of punishment" and that, therefore, the court's reconsideration which, in effect, substituted a $1,000.00 fine for total forfeitures, constituted an unlawful increase in the severity of the sentence. We are satisfied, however, that the accused received a substantial pecuniary gain from the reconsideration proceedings in that the additional fine was far less in monetary amount than the allowable forfeiture of all pay and allowances. *United States v. Brown*, 24 U.S.C.M.A. 314, 52 C.M.R. 25, 1 M.J. 465 (1976); *United States v. Dill*, 2 M.J. 271 (A.F.C.M.R.1976), pet. denied, 2 M.J. 179 (1976). Accordingly, in our opinion, the reconsidered sentence was less severe than the original.

For the reasons stated, the findings of guilty of Specifications 1, 2, 3, 5, and 6 are hereby set aside and these charges are ordered dismissed. Only so much of Specification 7 as finds that the accused received, as alleged, $200.00 in September and 40,000 Korean Won on 5 October 1975, and only so much of Specification 8 as finds that the accused received, as alleged, $2,000.00 on 21 September 1975, are correct in law and fact. The findings of guilty of Specification 4 and the Charge are correct in law and fact.

■ Reassessing the sentence on the basis of the findings herein approved, we find only so much thereof appropriate as provides for bad conduct discharge, reduction in grade to airman basic and a fine of $2,300.00.

The findings of guilty and the sentence, both as modified herein are

AFFIRMED.

EARLY, Senior Judge, and FORAY, Judge, concur.