**UNITED STATES of America,
Petitioner,**

v.

**Michael R. CAPRIO, Jr., Commander,
JAGC, U. S. Navy Military Judge,
Respondent.**

**Misc. No. 80–11.**

U. S. Navy Court of Military Review.

22 Oct. 1980.

Before GREGORY, DONOVAN and GLADIS, JJ.

## OPINION OF THE COURT ON PETITION FOR WRIT OF MANDAMUS

### PER CURIAM:

The United States has petitioned this Court to issue a writ of mandamus which would compel the respondent military judge to reinstate the Charge and the specification thereunder and to proceed with the trial thereon in the general court–martial case of *United States v. Aviation Electronics Technician Third Class Albert C. Cox, U.S. Navy.* Judge Caprio has previously ruled that court–martial jurisdiction was not present over the charged larceny of electronics equipment from the United States Government in view of Petty Officer Cox's reenlistment after the alleged commission of the offense. This ruling is not in clear violation of statute or decisional law. *United States v. Ginyard*, 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967); *United States v. Justice*, 2 M.J. 344 (A.F.C.M.R. 1976). For this reason, no grounds exist for extraordinary relief from the ruling of the military judge. *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979); *United States v. Redding*, 8 M.J. 719 (N.C.M.R.1979), *cert. filed* 8 M.J. 223 (C.M.A.1980).

Accordingly, the petition of the United States for extraordinary relief in the nature of a writ of mandamus is hereby denied.

### DONOVAN, Judge (concurring):

Predictability of outcome has grown scarce in United States trials. As sensitive courts, civilian and military, examine specifics of cases, harsh application of rules has yielded to case–by–case determinations often based on balancing of competing interests. Most observers, however, abhor the current litigation mass and seek fair, but firm, "rules".

The United States assails the trial judge's application of a rule because of the result. Petty Officer Cox assumed a duty to serve several years of active service in return for his initial enlistment in pay grade E–3, his rapid promotion to pay grade E–4, and his enrollment in several successive schools teaching highly marketable skills. Invoking the rule bars his trial for offenses occurring during that service.

As incentive to reenlist, the Department of Defense administers Congressionally authorized cash bonuses to selected enlisted

members. Basic qualification for, and the amount of, a bonus varies with the member's military skill. The government thereby applies fundamentals of economics to its enlisted forces: the supply and demand for specified skills are identified and pursued. We need not address the annual fluctuations in demand, supply, and dollars appropriated for bonuses; however, it is evident that principles of economics are recognized and factored into governmental decisions on enlisted retention.

Responding to his needs and government offers, Petty Officer Cox recognized a potential gain in early discharge and reenlistment, as opposed to serving his contracted term. In accordance with directives, he was officially released from the obligation of serving out his initial 4-year enlistment entered into in April 1976, as subsequently extended for 2 years, and he reenlisted for a term of six years on 23 July 1979. The offenses he pleaded guilty to occurred during March–April 1979. He was not suspected of the offenses until November 1979; thus, when the command approved his request for early discharge, it did not intentionally waive its jurisdiction to try him for the suspected offense. Charges were preferred in February 1980. He was therefore tried during his second enlistment, but at a time he was previously contracted to be still on active duty.

Article 3, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 803 states:

Jurisdiction to try certain personnel

(a) Subject to section 843 of this title (article 43), no person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, punishable by confinement for five years or more and for which the person cannot be tried in the courts of the United States or of a State, a Territory, or the District of Columbia, may be relieved from amenability to trial by court–martial by reason of the termination of that status.

NOTE. This article has been held to be unconstitutional to the extent that it purports to extend court–martial jurisdiction over persons who, although subject to the code at the time of the commission of the offense, later ceased to occupy that status. (*Toth v. Quarles*, 350 U.S. 11, [76 S.Ct. 1, 100 L.Ed. 8] (1955)). This article is still applicable to such persons, however, if they subsequently return to the status of a person subject to the code. (*United States v. Winton*, 15 U.S.C.M.A. 222, 35 C.M.R. 194 (1965); *United States v. Gallagher*, 7 U.S.C.M.A. 506, 22 C.M.R. 296 (1957)). See *United States v. Wheeler*, 10 U.S.C.M.A. 646, 28 C.M.R. 212 (1959).

(b) Each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is, subject to section 843 of this title (article 43), subject to trial by court–martial on that charge and is after apprehension subject to this chapter while in the custody of the armed forces for that trial. Upon conviction of that charge he is subject to trial by court–martial for all offenses under this chapter committed before the fraudulent discharge.

(c) No person who has deserted from the armed forces may be relieved from amenability to the jurisdiction of this chapter by virtue of a separation from any later period of service.

Examination of relevant Congressional hearings indicates that Congress intended the youth who served an enlistment to resume his civilian life free of fear that "minor or disciplinary offenses [could] take [him] back into the service for military trial."[1] The paternal attitude that predictable oversights or minor fights not be made the subject of belated military proceedings

---

[1]. *Bills to Enact and Establish a Uniform Code of Military Justice; Hearings on H.R. 2498 before a Subcommittee of the Committee on Armed Services of the House of Representatives*, 81st Cong., 1st Sess. 882–884 (March 18, 1949) and 1262 (April 2, 1949); H.R.Rep.No.491, 81st Cong., 1st Sess. 5, 11 (1949).

which would severely disrupt the personal life of a recently released serviceman is evident from the record and is commendable public policy. Article 3(a), UCMJ, was the mechanism by which serious crimes were to be made answerable. The reasoning runs as follows: if the crime is truly serious, the U.S. Attorney or State authorities will prosecute; if they have no jurisdiction, Article 3(a) permits trial by military courts–martial of certain offenses if the member is again on active duty by reenlistment; if the civilian authorities decline prosecution, or if the maximum confinement is less than five years, it supposedly is not so grave as to warrant belated prosecution.

The Court of Military Appeals pronounced a rule by which court–martial jurisdiction over offenses committed in a prior enlistment would be decided:

> Once an enlisted man has been discharged from the armed forces that discharge operates as a bar to subsequent trial for offenses occurring prior to discharge, except in those situations expressly saved by Article 3(a) of the Code. . . .

United States v. Ginyard, 16 U.S.C.M.A. 512, 516, 37 C.M.R. 132, 136 (1967). In so deciding, the Court of Military Appeals specifically considered the case of United States v. Noble, 13 U.S.C.M.A. 413, 32 C.M.R. 413 (1962), in which the facts are similar to appellant's. In Noble, decided five years before Ginyard, the Court noted that Noble also had a preexisting duty to serve a period which initially included the dates on which his offenses occurred. As in appellant's case, Noble had requested cancellation of his extension of initial enlistment and requested early reenlistment in

order to obtain favorable bonus terms then offered. The government accommodated his desires. In deciding Ginyard, the Court of Military Appeals specifically rejected a government argument that special cases exist, and jurisdiction continues, over those periods of time of the clerically–denominated reenlistment which were chronologically part of the initial obligation.[2] One service court followed the Ginyard rule, while discussing and finding a factual disagreement whether an extension of enlistment had occurred. United States v. Justice, 2 M.J. 344 (A.F.C.M.R.1976).

I concur in the denial of the petition for mandamus, as the military judge correctly applied the rule. However, as national policies on enlisted retention during the years since Ginyard have increasingly embraced market–place themes, resort to discharges for early reenlistment has been encouraged. There may, therefore, soon be a case, ripe for Court of Military Appeals review, to reconsider the Noble argument as it applies to the chronological remainder of an accused's initial service obligation and thereby protect the government from disadvantages created by its own largesse.[3]

---

**2.** Inconsistency can result; if a member extends his enlistment (whether for a school, for medical care of a dependent or other reason), jurisdiction continues; when he reenlists, Ginyard terminates jurisdiction. Prior to enactment of the UCMJ, continuing jurisdiction over persons already separated "extended . . . only under A.W. 94 pertaining to frauds against the Government to protect Government property." Bills to Enact and Establish a Uniform Code of Military Justice; Hearings on H.R. 2498 before

a Subcommittee of the Committee on Armed Services of the House of Representatives, 81st Cong., 1st Sess. 818 (March 17, 1949) and 881 (March 18, 1949).

**3.** Such redetermination need not be incongruent with precedent expressions on the finality of military discharges. See United States v. Kelly, 15 Wall. 34, 82 U.S. 34, 24 L.Ed. 106 (1873); Ex Parte Wilson, 33 F.2d 214 (D.E.D. Va.1929).