UNITED STATES, Appellee,

v.

**Specialist Five Donald D. LAWRENCE, SSN 062–54–7447, United States Army, Appellant.**

CM 439789.

U. S. Army Court of Military Review.

26 Feb. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Robert B. Williams, JAGC, and Captain John P. Galligan, JAGC, were on the pleadings for appellee.

Before RECTOR, CARNE and O'DONNELL, Appellant Military Judges.

## OPINION OF THE COURT

O'DONNELL, Judge:

The appellant was convicted of malingering and larceny in violation of Articles 115 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 915 and 921. His sentence to bad-conduct discharge, total forfeitures and reduction to the lowest enlisted grade was approved by the convening authority.

The malingering specification alleges pertinently that the appellant intentionally allowed himself to be "injured for the purpose of avoiding his duty as an enlisted person." [1] The relevant evidence in this

---

1. The appellant was originally charged with intentionally allowing himself to be "injured for the purpose of avoiding his duty as an enlisted person and for the purpose of interfering with an official military investigation into allegations of stolen military equipment." The appellant first pleaded guilty to those charges. However, when he stated during the providen-cy inquiry that he intended to interfere with the investigation but did not intend to avoid duty as an enlisted person, the military judge refused to accept the plea. The appellant then pleaded guilty to the lesser included offense of intentional self-injury without any purpose to avoid duty in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. *See*

bizarre case, which comes from the testimony of a friend of the appellant and from a statement made by the appellant to a criminal investigator, is for the most part uncontroverted. On the 24th or 25th of October 1978, the appellant filed a false report that his organizational equipment had been stolen so that he would not have to display this equipment during an inspection. The military police initiated an investigation into the matter. The appellant attempted to halt the investigation. When this failed, he and Specialist Marc Sproehnle concocted a scheme which they believed would effectively stop the investigation. The plan was that the appellant was to be injured in some way. He would then inform the law enforcement authorities that he had discovered who had stolen his equipment and had been injured in an attempt to retrieve the property. The appellant would then request the authorities to stop the investigation to avoid further injury to himself and possible injury to his family.

Sproehnle and the appellant discussed the scheme for about a week with particular emphasis on the methods to be employed. These included breaking the appellant's leg and knocking out several teeth. It was finally decided, after checking some medical books, that it would be safest for the appellant to be wounded in the back with a shotgun. To minimize the effect of the injury, the appellant wore a heavy coat and stood behind a tree to protect his spine. Also, a portion of the powder was removed from the shell. In addition, Sproehnle was to fire the weapon at an angle to lessen the severity of the impact.

Sproehnle fired one round, which missed. He fired another which struck the appellant on the right side of his back. As planned, the appellant attempted to drive to the military hospital on Fort Bragg, North Carolina for treatment, but he started to go into shock.[2] He stopped at a nearby facto-

ry. An ambulance was called and transported him to the hospital. The appellant stayed in the hospital for about five days and thereafter was placed on convalescent leave.

An essential element of malingering is that the person injure himself "for the purpose of avoiding work, duty, or service." Article 115, Code, *supra*. We are not satisfied beyond a reasonable doubt that the appellant injured himself for this purpose. We recognize that intent or purpose may be established by circumstantial evidence and that it may be inferred that a person intended the natural and probable consequences to an act intentionally performed by him. *United States v. Houghton*, 13 U.S.C.M.A. 3, 32 C.M.R. 3 (1962). But such an inference is not required and may be negated by other evidence. In the instant case, other evidence or facts show that the appellant did not intend to avoid duty, work, or service. These facts include the use of the heavy protective clothing, preliminary medical research to insure minimal injury, rejection of more serious means such as a broken leg, standing next to a tree, reducing the powder charge in the shell and the appellant's intention of driving himself to the hospital. As we view the evidence, it establishes only that the appellant wished to halt the investigation, a purpose which the judge correctly held to be outside the thrust of a malingering charge. We have not overlooked the fact that the appellant was hospitalized and placed on convalescent leave. However, this avoidance of duty, we believe, was an unintended and unanticipated consequence of the appellant's actions.

The conviction of malingering cannot stand. As the appellant pleaded guilty to the lesser offense of disorderly conduct under Article 134, we would normally be able to affirm findings of guilty to that

---

*United States v. Taylor*, 17 U.S.C.M.A. 595, 38 C.M.R. 393 (1968). The military judge later ruled that interfering in an official investigation is not a purpose contemplated by Article 115 and struck that language from the specification.

2. The plan was hatched in the appellant's off-post quarters. The shooting also occurred off-post.

offense. We are precluded from that action in this case, however, for jurisdictional reasons. The shooting occurred during a previous enlistment of the appellant. Unlike malingering, disorderly conduct does not carry a maximum punishment of five years confinement and therefore does not survive his discharge and subsequent enlistment. Article 3(a), Code, *supra*. *See United States v. Ginyard*, 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967).

The findings of guilty of Charge I and its specification are set aside and those charges are dismissed. The remaining findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Chief Judge RECTOR and Senior Judge CARNE concur.