**UNITED STATES, Appellee,**

v.

**Cary HORTON, Jr., Master Sergeant, U. S. Army, Appellant.**

No. 43236/AR.
CM 439334.

U. S. Court of Military Appeals.

Sept. 20, 1982.

For Appellee: *Colonel R. R. Boller, Major John T. Edwards, Captain Kenneth H. Clevenger* (on petition).

For Appellant: *Luther C. West, Esquire, Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major James F. Nagle, Captain Edwin S. Castle* (on petition).

*Opinion of the Court*

PER CURIAM:

In January, 1980, appellant was tried at Fort Campbell, Kentucky, by a general court-martial which consisted of officer and enlisted members. Contrary to his pleas, he was found guilty of two specifications of fraternizing with subordinate enlisted personnel, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934,[1] and two other specifications of disobeying a lawful general regulation by being

---

1. The alleged fraternization involved sleeping with two enlisted women over a period of time.

present in a private barracks room occupied by female personnel, in violation of Article 92, UCMJ, 10 U.S.C. § 892. As its sentence the court-martial adjudged a bad-conduct discharge, forfeiture of $300 pay per month for 6 months, and reduction to Private E–1. Thereafter, the convening authority modified some of the findings as to dates and suspended the bad-conduct discharge and that portion of the reduction below the grade of E–5, with provision for automatic remission.

Upon review by the United States Army Court of Military Review, appellant claimed for the first time that the court-martial lacked personal jurisdiction to try him for any of the four offenses of which he had been convicted and that, therefore, he was entitled to have the findings of guilty set aside. However, the court below decided this issue against Horton.

First, it determined that

[t]he pertinent fact surrounding this issue is that the appellant was discharged and reenlisted prior to the normal termination of his term of service. Orders 240–326, Headquarters, 101st Airborne Division (Air Aslt) and Fort Campbell, dated 28 August 1979, state that by virtue of his having "enlisted/re-enlisted this date," he was reassigned to his current unit with a reporting date of 30 August 1979. We are satisfied from this order that appellant accomplished the necessary incidents of his reenlistment on or before the date of the order, 28 August 1979, and was given prospective effective dates of discharge and reenlistment of 29 August 1979 and 30 August 1979, respectively. The discharge did not, therefore, take effect until the reenlistment already had been accomplished and this was prior to the expiration of the former term of service.

2. As we recently explained in *United States v. Clardy*, 13 M.J. 308, 310 n.4 (1982):

This type of discharge is . . . a discharge given to a servicemember even before he completes his obligated term of service, which is granted for the mutual convenience

*United States v. Horton*, CM 439334, unpublished opinion at 2 (A.C.M.R., March 15, 1982).

Next, upon consideration of *United States ex rel. Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949), and of our decision in *United States v. Ginyard*, 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967), the Court of Military Review concluded that those cases had not intended to preclude court-martial jurisdiction if, as here, there was merely a "short-term discharge."[2] Court-martial jurisdiction would be lost only "where there was a return to civilian status as was true in *Hirshberg*."[3] Therefore, since appellant never returned to civilian status, his discharge and immediate reenlistment did not terminate military jurisdiction over prior offenses. *United States v. Horton, supra* at 5–6.

In light of this jurisdictional holding, we granted review of the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW MISINTERPRETED *UNITED STATES EX REL. HIRSHBERG V. COOKE*, 336 U.S. 210 [69 S.Ct. 530, 93 L.Ed. 621] (1949) AND *UNITED STATES V. GINYARD*, 16 U.S.C.M.A. 512, 37 C.M.R. 132 (1967), BY HOLDING THAT THE APPELLANT'S DISCHARGE AND SUBSEQUENT REENLISTMENT DID NOT DIVEST THE COURT-MARTIAL OF JURISDICTION OVER OFFENSES NOT SUBJECT TO ARTICLE 3(a), UCMJ, AND ALLEGEDLY COMMITTED PRIOR TO THE DISCHARGE. *SEE UNITED STATES V. CALHOUN*, SPCM 14645 (A.C.M.R.1980), *CERTIFICATE OF REVIEW FILED*, 10 M.J. 188 (C.M.A.1980); *UNITED STATES V. CLARDY*, CM 439171 (A.C.M.R.1980), *CERTIFICATE OF REVIEW FILED*, 10 M.J. 121 (C.M.A.1980).

■ Our recent decision in *United States v. Clardy*, 13 M.J. 308 (C.M.A.1982), disposes

of the servicemember and the Government in order to allow him to reenlist immediately and thus remain on active duty.

3. *United States v. Horton*, CM 439334, unpublished opinion at 5 (A.C.M.R., March 15, 1982).

of this question. There, after analyzing *Hirshberg* in light of " 'long-standing' military practice" and precedent, *id.* at 311, we expressly overruled *United States v. Ginyard, supra.* However, the overruling was only prospective, so that servicemembers who received "short-term discharges" on or before July 12, 1982,—the date of our *Clardy* decision—cannot be tried by court-martial for offenses committed prior to the discharge, unless they fall within the scope of Article 3(a) of the Uniform Code, 10 U.S.C. § 803(a).[4] Since appellant's "short-term discharge" occurred late in August 1979, the court-martial had *no personal jurisdiction* to try him for offenses committed prior to that discharge.

The Court of Military Review observed:[5]

Of the four offenses of which appellant was convicted, three occurred during periods prior to the discharge and one covered a period which extended into the new term of service.

Thus, the findings of guilty as to the three prior offenses must be set aside pursuant to *Clardy.*

█ Specification 1 of Charge I alleges that, while serving as First Sergeant, appellant wrongfully fraternized and associated with a member of his company, SP4 Valerie Blanchard, "from about May 1979 thru about October 1979." The Government contends that "there is competent evidence of record which supports the findings of misconduct occurring after August 1979." On this premise, it concludes that the finding of guilty on this specification can be affirmed—presumably with a suitable modification to conform the date of appellant's

reenlistment and the date when the misconduct was found to have commenced.

We must reject this argument. At trial, the Government's evidence centered on times which were prior to appellant's discharge. For example, SP4 Miller testified that on or about *May 25, 1979,* she had observed a man in bed with her roommate, SP4 Blanchard, and then a couple of nights later she had again seen Blanchard in bed with a man, whom she felt sure was appellant. Up until about mid-June 1979, Miller had walked in on some five or six occasions when her roommate and the appellant were together under compromising circumstances. SP4 Turnage testified that on *August 24, 1979,* he had seen Blanchard come out of appellant's room between two and three in the morning. PFC Bankston described how, around *late May 1979,* appellant had loudly proclaimed that he wanted the world to know of his love and affection for SP4 Blanchard. In short, from the Government's evidence it appeared that the acts of fraternization had occurred chiefly before August 25, 1979—and so prior to appellant's discharge.

Of course, even if the record contains some parcel of evidence indicating that fraternization with SP4 Blanchard continued after appellant's discharge,[6] the finding of guilty should still be vacated. In the first place, we cannot be sure that the members would have returned a finding of guilty on specification 1 of Charge I, if the fraternization with SP4 Blanchard had been alleged only as postdating appellant's discharge and if the evidence admitted thereon had been limited in a corresponding fashion.[7] Second, the evidence to support the

---

4. *United States v. Gallagher,* 7 U.S.C.M.A. 506, 22 C.M.R. 296 (1957).

5. *United States v. Horton, supra* at 2. Specification 2 of Charge I and specification 2 of Charge II alleged misconduct "from about March 1979 thru about October 1979." However, in each instance, the convening authority—acting upon advice in his staff judge advocate's post-trial review—substituted for these allegations the words "in April 1979."

6. For instance, Miller also testified that from mid-June through October of 1979, Blanchard

hardly ever slept in her room. Since appellant's room "was located right across the hall," the implication was that she cohabited with appellant when she did not sleep in her assigned barracks room.

7. We need not determine whether under applicable rules of evidence misconduct in a prior enlistment might be used to establish similar misconduct in the current enlistment. In the case at bar, evidence was not offered on this basis.

other three offenses—offenses similar in nature but over which the court-martial had no jurisdiction—should never have been before the members at all. From our review of the record, we have no doubt that receipt of this evidence probably would have affected the members' findings as to specification 1 of Charge I.

In view of all the circumstances—including the convening authority's mitigating action on sentence—there is no point in authorizing a rehearing as to appellant's guilt of any acts of fraternization which may have postdated his discharge. Accordingly, we reverse the decision of the United States Army Court of Military Review, set aside the findings and the sentence, and dismiss all charges.

FLETCHER, Judge (concurring in the result):

I concur in the result in accord with my opinion in *United States v. Clardy*, 13 M.J. 308, 317 (C.M.A.1982) (Fletcher, J., concurring in the result).